Arthur T. WALTERS, pro se, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 94–756C.

United States Court of Federal Claims.

Jan. 28, 1997.

7. Def.Br. at 15.

Arthur T. Walters, Pittsburgh, PA, pro se.

Paul S. Padda, Washington, D.C., with whom was Assistant Attorney General Frank W. Hunger, for defendant.

## ORDER

MILLER, Judge.

Plaintiff challenges the decision of the Army Board for Correction of Military Records ("ABCMR") sustaining his separation from military service and denying him the pay and benefits commensurate with his office, as well as the Army Active Guard Reserve Continuation Board's ("AGR–CB") recommendation that plaintiff not be retained on active duty. Defendant challenges the justiciability of plaintiff's claim. Both parties assert that they are entitled to judgment on the merits. Argument is deemed unnecessary.

## FACTS

The following facts, drawn from the administrative record, are undisputed unless otherwise noted. Arthur T. Walters ("plaintiff") served in the United States Army, Army Guard Reserve for over 13 years. By letter

dated January 6, 1994, the Director of Full Time Support Management Center (the "FTSMC") notified plaintiff that he was being recommended for removal from active duty pursuant to Army Regulation ("A.R.") 635–100 ¶ 3–49a (May 1, 1989), which prescribes the procedures for involuntarily releasing or "separating" officers from active duty.[1]

The FTSMC submitted his recommendation to remove plaintiff from active duty to the Department of the Army Active Duty Board (the "DAADB"). Plaintiff was advised that, although he could not make an appearance to contest his proposed release, he could submit any written material that he wanted the DAADB to consider. On March 15, 1994, the DAADB convened and unanimously recommended that plaintiff be released from active duty, because, according to the DAADB, plaintiff's "most recent" Officer Evaluation Reports ("OERs")[2] demonstrated a steady decline in performance that rendered plaintiff a "noncompetitive officer." On March 21, 1994, the Deputy Assistant Secretary of the Army adopted the DAADB's recommendation to release plaintiff and further recommended that the Reserve Personnel Center ("ARPERCEN") Commander "consider[ ] ... elimination of the officer from the United States Army Reserve." The Army honorably separated plaintiff from active duty on August 3, 1994, and gave plaintiff $15,000 separation pay and the opportunity to obtain career and alumni counseling. Plaintiff, however, did not receive a reentry ("RE") code or Voluntary Separation Incentive Program ("VSIP") pay.

Prior to his termination on August 4, 1994, the AGR–CB reviewed Active Guard Reserve ("AGR") officers. The AGR–CB reviews officers every five years and determines their fitness for duty. After reviewing plaintiff, the AGR–CB recommended that the Army separate plaintiff from active duty. The Chief of the Army Reserve approved the recommendation on March 4, 1994. However, on April 11, 1994, the AGR–CB was discontinued as the DAADB was essentially serving the same function. As such, plaintiff was separated from service pursuant to the DAADB's recommendation.

Plaintiff filed several applications with the ABCMR seeking to overturn the DAADB's decision. Specifically, plaintiff asserted that the DAADB procedurally erred by precluding him from appearing before it to contest his removal. Additionally, plaintiff argued that the DAADB substantively erred in basing its separation decision on an OER that he successfully appealed after the DAADB proceeding concluded.[3] According to plaintiff, removal of this OER alters the review of his overall record. Plaintiff argued that these improprieties warranted the invalidation of his selection for separation by the DAADB and the AGR–CB; the correction of an OER for the period commencing October 1, 1991— June 2, 1992; the removal of an OER commencing November 1, 1979—May 22, 1980; and the reinstatement of his former AGR status. Alternatively, plaintiff requested: 1) appointment as a warrant officer and/or noncommissioned officer; 2) amendment of his Certificate of Release from Active Duty to authorize VSIP pay for him; 3) military education credit and promotion because of his wrongful separation; 4) assignment of a RE

---

1. A.R. 635–100 ¶ 3–49a provides, in pertinent part: "Officers will be involuntarily released from active duty upon approval of a recommendation of the DA [Department of the Army] Active Duty Board [DAADB] for misconduct, moral or professional dereliction and/or when their degree of efficiency and manner of performance or the need of the service require such action."

2. OERs are ratings of an officer's performance and promotion potential. Generally, the reports are prepared by the officer's immediate supervisors and contain both written comments and numerical ratings. *See* A.R. 635–100. Specifically, the DAADB considered plaintiff's OERs covering the following periods: December 3,

1990–March 3, 1991; March 4, 1991–September 30, 1991; October 1, 1991–June 1, 1992; June 3, 1992–April 7, 1993.

3. Plaintiff appealed his OER for the period commencing September 8, 1992–April 7, 1993, to the Appeals Branch, ARPERCEN, pursuant to A.R. 623–105 (Nov. 15, 1981). The Appeals Branch requested a commander's inquiry pertaining to the evaluation. The report was deemed administratively inaccurate. Accordingly, the report forms were "obliterated, and the memorandum, declaring the period nonrated, was filmed on the performance portion of your OMPF microfiche." ARPERCEN notified plaintiff of his successful appeal on August 1, 1994.

code; and 5) credit for service time sufficient to qualify him for the early retirement program.

In a Memorandum of Decision dated June 28, 1995, the ABCMR rejected all of plaintiff's arguments and requests for relief. The ABCMR found that plaintiff was not entitled to invalidation of the separation decision, to reinstatement of his active status, to reconsideration of the separation action, or to correction and/or removal of the disputed OERs. Concomitantly, the ABCMR concluded that plaintiff was ineligible for a promotion, VSIP pay, an appointment as a warrant or noncommissioned officer, and an assignment of a RE code and credits toward early retirement. The ABCMR upheld the DAADB's findings and denied plaintiff's challenge because plaintiff's contentions were

not sufficiently supported by his application. There is no injustice or error in his records. It is clear that he was properly recommended for separation from active duty to the DAADB. He had a record of identified substandard performance as shown on the two OER's he received ending on 30 September 1991 and 2 June 1992. While he did not concur with this identification and stated that this record was standard at worst, these two OER's show otherwise. Based on the review of his records and the recommendation for his separation from active duty, the DAADB recommended his separation, and also referral of his case to ARPERCEN for elimination from the Reserve as well. The DAADB appears to have been conducted properly in accordance with pertinent regulations, and the recommendations were also based on a unanimous vote. His rights in this matter were not violated, he was advised of the pending DAADB and of his opportunity to submit matters in his own behalf. He was not ordered to show cause and he was not authorized by statute or regulation to appear in person before the DAADB. The [ABCMR] notes that one of the OER's that formed the basis for the recommendation for his separation [that ending April 1993] was subsequently removed from his records, but concludes that that action does not invalidate the DAADB's action or approval of its recommendation. Notwithstanding removal of that OER, his level of performance remained substandard and he was fairly considered and separated.

Plaintiff filed a request for reconsideration of the ABCMR's decision upholding the DAADB's decision releasing him from active duty. On August 17, 1995, the ABCMR denied this request because plaintiff failed to present any material evidence to warrant reconsideration. Plaintiff petitioned the ABCMR for reconsideration several more times. Ultimately, the ABCMR issued its decision on June 12, 1996, which denied reconsideration because plaintiff failed to present "new material evidence of such substance and materiality as might reasonably offer a basis for reversal of the original decision of the [ABCMR], the [ABCMR]'s decision on 28 June 1995 remained final. There are currently no unresolved action[s] concerning you before the [ABCMR]."

Almost two years prior to the June 12, 1996 decision denying plaintiff reconsideration, plaintiff filed a complaint with the United States Court of Federal Claims seeking "approximately" $108,402.34 in alleged damages against the United States. Complaint filed Oct. 17, 1994, at 3. Additionally, plaintiff further demands:

reinstatement and correction of the record. Also, damages under 12/485 may be payable due to the severity of the erroneous observations made [by] military physicians (negligence).

Also reinstatement to Active Duty due to improper consideration for a Department of the Army Advisory Board and incorrect records placed in front of a Department of the Army Active Guard Reserve Continuation Board.

Compl. at 2. On March 29, 1995, the court suspended the case, over plaintiff's objection, pending the outcome of proceedings before the ABCMR. After the court was advised on July 22, 1996, that the June 28, 1995 ABCMR decision remained final, the court lifted the suspension.

Defendant filed its Motion To Dismiss Or, in the Alternative, Defendant's Motion for Judgment upon the Administrative Record

on November 1, 1996. Plaintiff attempted to file his response prior to defendant's having filed the instant motion. On November 19, 1996, the court filed by leave plaintiff's "Response to D[i]spositive Motion." Plaintiff's "brief" consisted of copies of various Army regulations, case digests, dictionary definitions, military review reports, a comparison chart, a pie chart, newsletters, bulletins, handwritten notes, several pages only containing a page number, paraphrases of the United States Code, and a 4–page textual statement alleging various acts of fraud and violations of procedure, including the right to counsel. The court has reviewed all of plaintiff's filed submissions. The court understates the incomprehensible nature of these filings, but it appears that plaintiff seeks the court's review of the administrative actions to date and judgment in his favor on the merits. Defendant argues that plaintiff's claim is nonjusticiable and that defendant is entitled to summary judgment on the merits.

## DISCUSSION

 Plaintiff is proceeding *pro se* and is not expected to frame issues with the precision of a common law pleading. *Roche v. USPS,* 828 F.2d 1555, 1558 (Fed.Cir.1987). It is not the court's role, however, to become plaintiff's advocate. In the instant case, plaintiff filed a considerable amount of materials and paperwork. Apart from a few select pages, plaintiff does not set forth a comprehensible argument. Plaintiff's argument appears to be summarized in his incomplete "Table of Contents":

I. Erroneous records incorrectly recorded and viewed once corrected in accordance with law and regulation and measured by a justiciable standard contained in guidance, return the plaintiff to active duty. Decision of the Army is not subjective and plaintiff'[s] record is well within their (Army's) stated discretion.

II. Defendant is not entitled to summary judgment, decision of the ABCMR to deny the plaintiff's petition was arbitrary, capricious, contrary to law and regulation and unsupported by substantial evidence.

Plf's Br. filed Nov. 19, 1996, at Table of Contents (capitalization omitted). These two statements, combined with plaintiff's one- and one-half page "Statement of the Case" and one-page "Argument" provided the only framework for the court in construing plaintiff's papers. The latter contends:

The reports considered substandard by the ABCMR are clearly standard and their rating as standard is not subjective in nature (view is nondiscretionary). This is as stated in law and regulation, and confirmed in evaluation by OCAR, FTSMC and OCAR, ARPERCEN.

Reports 910304–910930 and 911001–920630 are misreported by the ABCMR as substandard, below average in performance and potential:

Officer rated 910304–910930 is found competitive with any officer in the active guard reserve program (OCAR, FTSMC), above standard.

Officer rated in 911001–920630 is found standard in commander's response to request for redress, 13 March 1993 (OTJAG, OCAR, ARPERCEN). Areas evaluated are at enclosure.

Performance erroneously reported due to [misinterpretation] of reports by the ABCMR (lack of experience by the Board members in preparation and interp[r]etation of OER) clearly warrants correction by the court and meets the standards or tests set by law, regulation and guidance. Major Art Walters, served under grade and performed in a superior manner in each reporting period (see comparison at brief and chart at enclosure, Ordnance magazine, branch notes, PERSCOM).

Plf's Br. filed Nov. 19, 1996, at Argument (capitalization omitted).

1. *Justiciability*

 Plaintiff asserts that he was improperly separated from duty and that the ABCMR erred in denying him reinstatement and the pay and allowances of the office. His claims are within the court's jurisdiction pursuant to the Tucker Act, 28 U.S.C. § 1491(a) (1994).[4] *See Sargisson v. United*

4. The Act provides:

(1) The [Court] shall have jurisdiction upon any claim against the United States founded

*States,* 913 F.2d 918, 920 (Fed.Cir.1990); *Sanders v. United States,* 219 Ct.Cl. 285, 295, 594 F.2d 804, 810 (1979). Defendant does not contest the court's jurisdiction, but the justiciability of the claim.

"The distinction between" [nonjusticiability and lack of jurisdiction] "is significant. In the instance of nonjusticiability, consideration of the cause is not wholly and immediately foreclosed; rather, the Court's inquiry necessarily proceeds to the point of deciding whether the duty asserted can be judicially identified and its breach judicially determined, and whether protection for the right asserted can be judicially molded."

*Sargisson,* 913 F.2d at 920 (brackets in original) (quoting *Baker v. Carr,* 369 U.S. 186, 198, 82 S.Ct. 691, 700, 7 L.Ed.2d 663 (1962)); *see Murphy v. United States,* 993 F.2d 871, 872 (Fed.Cir.1993). "A controversy is 'justiciable' only if it is 'one which the courts can finally and effectively decide, under tests and standards which they can soundly administer within their special field of competence.'" *Id.* (quoting *Greene v. McElroy,* 254 F.2d 944, 953 (D.C.Cir.1958), *rev'd on other grounds,* 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959)). Otherwise, the "'court would have no meaningful standard against which to judge the agency's exercise of discretion.'" *Webster v. Doe,* 486 U.S. 592, 600, 108 S.Ct. 2047, 2052, 100 L.Ed.2d 632 (1988) (quoting *Heckler v. Chaney,* 470 U.S. 821, 830, 105 S.Ct. 1649, 1655, 84 L.Ed.2d 714 (1985)). Thus, the court must examine plaintiff's claims and determine whether the court can afford plaintiff proper relief.

■ Although the court may have jurisdiction of this case under the Tucker Act, a court cannot review the military's exercise of discretion in personnel matters. *Voge v. United States,* 844 F.2d 776, 779–80 (Fed.Cir.

1988). Plaintiff essentially argues that the court should require the Army to return him to active duty. Granting such relief necessarily requires the court to substitute its judgment for the military's because the court would be ruling that plaintiff's OERs are standard rather than substandard, despite their prior review by the military. To the extent that plaintiff seeks such a substantive review, the court cannot engage in it.

Under 10 U.S.C. § 1552 (1994),[5] only the Secretary of a military department has discretionary authority to correct plaintiff's military records. The Secretary may act through a correction board. In the instant case, the Secretary of the Army established the ABCMR and gave it such discretionary authority. *See* 32 C.F.R. § 581.3 (1996). Through the ABCMR, the Army acted and rendered its decision. This decision was within the Army's purview, not the judiciary's. "[J]udges are not given the task of running the [military].... The military constitutes a specialized community governed by a separate discipline from that of the civilian. Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate ... [military] matters as the [military] must be scrupulous not to intervene in judicial matters." *Orloff v. Willoughby,* 345 U.S. 83, 93–94, 73 S.Ct. 534, 540, 97 L.Ed. 842 (1953); *see Sanders,* 219 Ct.Cl. at 302, 594 F.2d at 813–14 ("Although correction board decisions with pay consequences are reviewable here, it cannot be forgotten that Congress entrusted primary responsibility for the record-correction function to the service Secretaries acting through correction boards."). Thus, such discretionary decisions by the Executive must be accorded considerable deference. *See Goldman v. Weinberger,* 475 U.S. 503, 507–08, 106 S.Ct. 1310, 1313, 89 L.Ed.2d 478 (1986).

either upon ... an Act of Congress or any regulation of an executive department....
(2) To provide an entire remedy and to complete the relief afforded by the judgment, the court may, as an incident of and collateral to any such judgment, issue orders directing restoration to office or position ... and correction of applicable records, and such orders may be issued to any appropriate official of the United States....

**5.** 10 U.S.C. § 1552 provides:

The Secretary of a military department, ... may correct any military record of that department when he considers it necessary to correct an error or remove an injustice.... Except when procured by fraud, a correction under this section is final and conclusive on all officers of the United States.

Plaintiff's claims that erroneous evidence was reviewed do not render plaintiff's claims justiciable.

> [T]he possibility of erroneous records does not transform an otherwise nonjusticiable action into a reviewable one. After the Claims Court reviewed and purported to correct the records, any additional corrective action it devised was the result of nothing more than speculation that the [Board's] decision would have been different. . . . The correction of allegedly erroneous records added nothing to the court's ability to second guess the military. There were still no test or standards it could apply to determine whether the officer would have been released even on the court's version of the record.

*Murphy,* 993 F.2d at 873.

In the present case, the ABCMR specifically found that substantial evidence remained in plaintiff's file to warrant involuntary separation from service, despite the erroneous OER. To overturn the ABCMR's finding would require this court to second guess whether the officer should have been released with the remaining evidence. For this reason the court concludes that plaintiff's claim is nonjusticiable. *See Sanders,* 219 Ct.Cl. at 302, 594 F.2d at 814 ("[W]hile we may disagree with a correction board about whether or not a specific situation was unjust, we will not substitute our judgment for the board's when reasonable minds could reach differing conclusions.").

### 2. *Judgment on the merits*

■ If the court had decided that the claim was justiciable, the case, including any alleged procedural claims, appropriately could be resolved by summary judgment. In military pay matters, the court reviews a plaintiff's case "through the prism of a correction board." *Cohn v. United States,* 15 Cl.Ct. 778, 779 (1988). In the present case, the ABCMR denied plaintiff's claims. To overturn that decision, plaintiff must demonstrate by "cogent and clearly convincing evidence" (1) a material legal error or injustice in the correction board proceeding and (2) an adequate nexus or link between the error or injustice and the adverse action. *Hary v. United States,* 223 Ct.Cl. 10, 15, 618 F.2d

704, 706 (1980). Plaintiff has the burden of showing that the resultant board decisions were "arbitrary, capricious, contrary to law or unsupported by substantial evidence." *Wronke v. Marsh,* 787 F.2d 1569, 1576 (Fed. Cir.1986); *see Doty v. United States,* 53 F.3d 1244, 1252 (Fed.Cir.1995) (finding that court review of agency action only encompasses "whether, on the grounds on which the agency relied for the action that it took, the agency action constituted arbitrary or capricious conduct, or was an abuse of the agency's discretionary authority, or violated an applicable statute or regulation"); *Hary,* 223 Ct.Cl. at 15, 618 F.2d at 706 (discussing plaintiff's burden of demonstrating material legal error or manifest injustice). Additionally, plaintiff must overcome the presumption that "administrators of the military, like other public officers, discharge their duties correctly, lawfully, and in good faith." *Sanders,* 219 Ct.Cl. at 302, 594 F.2d at 813 (citations omitted); *see Bockoven v. Marsh,* 727 F.2d 1558 (Fed.Cir.1984) (discussing duty).

■ Initially, plaintiff argues that his selection for separation by the DAADB and the AGR–CB was improper as "erroneous" OER(s) was(were) considered in the decision-making process. The ABCMR specifically rejected this argument:

> [Plaintiff] was properly recommended for separation from active duty to the DAADB. He had a record of identified substandard performance as shown on the two OER's he received ending on 30 September 1991 and on 2 June 1992. While he did not concur with this identification and stated that his record was standard at worst, these two OER's show otherwise.

Thus, the ABCMR's decision was supported by substantial evidence. *See Heisig v. United States,* 719 F.2d 1153, 1156–57 (Fed.Cir. 1983) (holding that court may disagree with correction board's decision but cannot substitute its judgment where "reasonable minds" could reach differing results on facts presented).

Plaintiff may not agree with the characterization of his OERs as substandard. After reviewing the OERs, the court observes that one is certainly better than the other. How-

ever, it is the Army, not the court, that is the crucial decisionmaker with respect to this inquiry. The military must determine who is and is not fit to serve. *See Brenner v. United States*, 202 Ct.Cl. 678, 694, 1973 WL 21354 (1973) ("No court is in a position to resolve and pass upon the highly complicated questions and problems involved in the promotion procedure, which includes, but is not limited to, an analysis of the fitness reports and personnel files and qualifications of all the officers considered.").

Plaintiff's allegations of undue influence or fraud are baseless. Plaintiff may be asserting that the AGR–CB action was reviewed improperly and considered by the DAADB. However, the record reveals that the AGR–CB action occurred after the DAADB recommended plaintiff be separated from duty. Since the AGR–CB action took place after the DAADB proceeding, the DAADB could not have considered the AGR–CB's findings.

■ Additionally, plaintiff's charges that he was denied his right to counsel and to appear before the DAADB, but erroneously cites various authorities and regulations that are inapplicable to the case at bar. The ABCMR correctly noted that plaintiff was not ordered to show cause and was informed of his right to submit evidence before the DAADB. Not having been ordered to show cause, plaintiff was not entitled to counsel. Thus, the DAADB did not commit a procedural error.

Based on the foregoing, plaintiff has failed to demonstrate convincingly that any of the ABCMR's or AGR–CB's actions resulted in manifest or legal error or injustice. The actions therefore were not arbitrary, capricious, contrary to law or regulation, or unsupported by substantial evidence.

## CONCLUSION

Because plaintiff's claim is nonjusticiable, defendant's motion to dismiss is granted. Plaintiff's cross-motion for judgment is denied. The Clerk of the Court shall enter judgment for defendant.

**IT IS SO ORDERED.**