Lyle D. McMULLEN, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 00–518 C.

United States Court of Federal Claims.

Nov. 20, 2001.

J. Byron Holcomb, Bainbridge Island, WA, for plaintiff.

Joanne E. Johnson, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant, with whom were James M. Kinsella, Deputy Director; David M. Cohen, Director; and Stuart E. Schiffer, Acting Assistant Attorney General. Lieutenant Colonel Jill M. Grant and Captain Toby D. McCoy, United States Army Litigation Division, Arlington, VA, of counsel.

## OPINION

DAMICH, Judge.

This case is before the Court on the Defendant's motion to dismiss pursuant to Rule 12(b)(4) of the Rules of the Court of Federal Claims ("RCFC") or, in the alternative, motion for judgment upon the administrative record[1] pursuant to RCFC 56.1 and the Plaintiff's motion for judgment upon the administrative record pursuant to RCFC 56.1. The Plaintiff challenges the decision of the Army Board for Correction of Military Records ("ABCMR") upholding his involuntary removal from active duty and the imposition of non-judicial punishment upon him under Article 15 of the Uniform Code of Military Justice ("UCMJ"), 10 U.S.C. § 815. He requests correction of his military records, reinstatement, back pay and allowances, and placement in retirement status provided by Temporary Early Retirement Authority ("TERA"), 10 U.S.C. § 1293, note 1, or, in the alternative, separation pay in light of his honorable characterization of his active duty service. For the reasons enumerated below, the Court GRANTS the Defendant's motion to dismiss in part and GRANTS its motion for judgment upon the administrative record in part. The Plaintiff's motion for judgment upon the administrative record is DENIED.

## I. Background

The Plaintiff, Lyle D. McMullen, served on active duty in the U.S. Army Active Guard Reserve ("AGR") program as a commissioned Chief Warrant Officer/W–4 ("CW4") from January 11, 1987, until he was released from active duty ("REFRAD") on April 1, 1999. At the time of his release, the Plaintiff had completed 15 years, 9 months, and 14 days of active federal service and over 9 years of inactive service. *Administrative Record* ("*AR*") at 3, 30.

On February 14, 1997, an investigating officer was appointed to conduct an investigation into alleged misconduct by the Plaintiff, pursuant to Army Reg. 15–6.[2] This investigation was conducted following allegations of misuse of a government credit card, making false statements to obtain permissive leave, making false claims for pay and allowances, fraternization with an AGR sergeant, adultery with an AGR sergeant, making false official statements that he was married in an application for married government housing, and intimidation of a witness. *AR* at 3. On March 7, 1987, the investigating officer recommended that court-martial charges be preferred against the Plaintiff with respect to some of these allegations. *AR* at 4.

On January 11, 1998, the Plaintiff accepted, in lieu of a trial by court-martial, non-judicial punishment under 10 U.S.C. § 815 for violations of UCMJ Articles 107 (false official statements related to his marital status), 134 (obstruction of justice by attempting to influence the testimony of a witness), and 92 (violation of a lawful order to refrain from contacting any witnesses in the investigation against him). *Id.* After having been afforded the opportunity to consult with counsel, the Plaintiff elected not to have a person speak on his behalf or to present in person matters in defense, mitigation, and/or extenuation. *AR* at 19. On January 22, 1998, Brigadier General ("BG") James M. Collins, Jr., Deputy Commander of the 70th Regional Support Group, imposed a punitive letter of reprimand as non-judicial punishment. *AR* at 19–

---

1. The Plaintiff incorrectly stylized his motion as a "motion for summary judgment."

2. Army Reg. 15–6, *Procedural Guide for Investigating Officers,* dated September 30, 1996.

21. The Plaintiff elected not to appeal this decision. *AR* at 19.

The Plaintiff's case was then submitted to the Department of the Army Active Duty Board ("DAADB") pursuant to the provisions of Army Reg. 600–8–24, *Officer Transfers and Discharges*, dated July 21, 1995, ¶ 2–31. On February 8, 1999, the DAADB recommended that the Plaintiff be involuntarily REFRAD, with an honorable characterization of service, because of "misconduct, moral or professional dereliction of duty and for substandard performance." *AR* at 24. On February 11, 1999, the Deputy Assistant Secretary of the Army for Army Review Boards ("DAS") Karl Schneider, approved the Plaintiff's involuntary REFRAD because of "misconduct, moral or professional dereliction of duty, with an Honorable Discharge." *AR* at 29.

On April 1, 1999, the Plaintiff was RE-FRAD with an honorable characterization of service and assigned to the U.S. Army Control Group (Reinforcement), retaining his commission as a CW4 in the Reserves. *AR* at 128. The Plaintiff's DD Form 214, Certificate of Release or Discharge From Active Duty, reflects separation without separation pay with a Separation Program Designator code of LGH (for non-retention on active duty). *AR* at 134.

On October 9, 1999, the Plaintiff petitioned the ABCMR for relief, including the removal of the non-judicial punishment from his record, reinstatement to active duty, receipt of back pay and allowances, and retirement for length of service, if eligible. *AR* at 3. In the alternative, the Plaintiff sought the payment of separation pay based on his honorable characterization of service. *Id.* As the basis for such relief, the Plaintiff maintained that he was wrongfully denied separation pay because the regulation denying separation pay does not comport with the statute authorizing separation pay; that the Article 15 non-judicial punishment imposed on him was void because BG Collins, a reserve officer not on active duty, did not possess legal authority to conduct the Article 15 proceeding on a reserve officer on active duty even though he was within that officer's command; and that the Article 15 action against him was void

because the charges against him were without legal or factual basis. *Id.* On May 25, 2000, the ABCMR denied relief, finding that: "The applicant has failed to submit sufficient relevant evidence to demonstrate the existence of probable error or injustice." *AR* at 8. More specifically, the ABCMR found that the Plaintiff's separation was directed to the appropriate authority based on the finding of a properly constituted DAADB; that BG Collins was entitled to administer the Article 15 action against the Plaintiff; and that, even if the Article 15 action was null and void, the findings of moral or professional dereliction in the investigation proceedings against the Plaintiff constituted a sufficient basis for the REFRAD action. *AR* at 6–7.

In this proceeding, the Plaintiff challenges the imposition of non-judicial punishment under Article 15 of the UCMJ, his release from active duty without separation pay by the DAADB, and the ABCMR's decision affirming his separation. In addition to seeking reinstatement to active duty, he maintains that he is eligible for early retirement pursuant to 10 U.S.C. § 1293, note 1.

## II. Failure to State a Claim

### A. Standard

"A motion to dismiss under Rule 12(b)(4) for failure to state a claim upon which relief can be granted is appropriate when the facts asserted by the claimant do not under the law entitle him to a remedy .... In reviewing the dismissal under Rule 12(b)(4), we are mindful that we must assume all well-pled factual allegations as true and make all reasonable inferences in favor of ... the non-movant." *Perez v. United States,* 156 F.3d 1366, 1370 (Fed.Cir.1998). "Dismissal under Rule 12(b)(4) is appropriate only when it is beyond doubt that the plaintiff can prove no set of facts in support of his claim [that] would entitle him to relief .... Because granting such a motion summarily terminates the case on its merits, courts broadly construe the complaint, particularly in light of the liberal pleading requirements under the Federal Rules of Civil Procedure." (Citations omitted; internal quotation marks omitted.) *Ponder v. United States,* 117 F.3d

549, 552–53 (Fed.Cir.1997), *cert. denied,* 522 U.S. 1110, 118 S.Ct. 1040, 140 L.Ed.2d 106 (1998). In the present case, the Defendant argues that the Plaintiff's reinstatement and TERA claims are nonjusticiable.

#### B. Whether the Plaintiff's Reinstatement and TERA Claims Present Nonjusticiable Issues

##### 1. Reinstatement

■ The Defendant argues that the Plaintiff's claims for reinstatement are nonjusticiable because 10 U.S.C. § 12313(a) ("Except as otherwise provided in this title, the Secretary concerned may at any time release a Reserve under his jurisdiction from active duty.") gives the Secretary of the Army the discretion to release a Reserve from active duty at any time. Regrettably, the Plaintiff fails to address the Defendant's nonjusticiability argument, but instead seems to conflate the concept of justiciability with jurisdiction. This failure is particularly regrettable because the Defendant has pressed its nonjusticiability argument somewhat further than warranted. This Court possesses subject matter jurisdiction pursuant to the Tucker Act, 28 U.S.C. § 1491(a)(1), which provides that "[t]he United States · Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded ... upon any Act of Congress." The Plaintiff's basic entitlement for back pay, reinstatement, and correction of records is provided by 37 U.S.C. § 204(a)(1). However, justiciability is a distinct concept from jurisdiction. Once it has been established that this Court has jurisdiction over a controversy, it must then be determined "whether the duty asserted can be judicially identified and its breach judicially determined, and whether protection for the right asserted can be judicially molded." *Murphy v. United States,* 993 F.2d 871, 872 (Fed.Cir. 1993), *cert. denied,* 511 U.S. 1019, 114 S.Ct. 1402, 128 L.Ed.2d 75 (1994) (quoting *Baker v. Carr,* 369 U.S. 186, 198, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962)). The judiciary does not have the competence to review the merits of the military service secretary's substantive decisions regarding the conduct of military affairs. *Adkins v. United States,* 68 F.3d 1317, 1322 (Fed.Cir.1995). Such disputes are nonjusticiable as a matter of policy because "judges are not given the task of running the Army.... Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters...." *Orloff v. Willoughby,* 345 U.S. 83, 93–94, 73 S.Ct. 534, 97 L.Ed. 842 (1953). An example of a substantive decision by the military would include the specific merits of a decision to release a person from military service. *Murphy,* 993 F.2d at 874. Such claims are nonjusticiable because, under 10 U.S.C. § 12313, the Secretary of the Army is given discretionary authority to release a reservist from active duty at any time.[3]

■ Even though this statute on its face does not provide any procedural or substantive limitations on the discretion of the Secretary of the Army to release a reservist from active duty, the Secretary's discretion with respect to the Army's compliance with its own regulations and procedures is not unfettered. It is well-established in this Circuit that the failure of a branch of the military to follow its own procedure in rendering a military decision, including the release of a reservist from active duty, is a claim that is justiciable in this Court. *See, e.g., Adkins,* 68 F.3d at 1323 ("[A] challenge to the particular *procedure* followed in rendering a military decision may present a justiciable controversy"); *Murphy,* 993 F.2d at 873 ("[W]hen the military is given unlimited discretion by Congress, it is nevertheless bound to follow its own procedural regulations if it chooses to implement some."); *Sargisson v. United States,* 913 F.2d 918, 921 (Fed.Cir. 1990) ("[O]nce the Secretary promulgated regulations and instructions and made them the basis for [a reservist's] release, his action became subject to judicial review for compliance with those regulations and instructions, even though he was not required to issue them at all."). These claims are justiciable because "the test or standards against which this court measures the military's conduct are inherent; they are the applicable statutes

---

**3.** "Except as otherwise provided in this title, the Secretary concerned may at any time release a Reserve under his jurisdiction from active duty." 10 U.S.C. § 12313(a).

and regulations." *Adkins,* 68 F.3d at 1323. Therefore, to the extent that a reservist challenges a decision of the military corrections board upholding his release from active duty on the basis that the military did not properly apply its own regulations and procedures, a reinstatement claim does present a justiciable controversy. *See Skinner v. United States,* 219 Ct.Cl. 322, 334, 594 F.2d 824 (1979) (plaintiff reinstated to active duty upon a wrongful separation by permanent selection board due to improper application of legal procedures).

In this case, the Plaintiff presents a veritable grab-bag of arguments as to why the ABCMR, in his view, incorrectly upheld the Army's REFRAD action. Such arguments include: (a) the Article 15 action conducted against him is void because his due process rights under the Fifth Amendment were violated in various ways throughout the course of the proceeding; (b) the Article 15 action conducted against him is void because BG Collins, his commanding officer, a reservist not on active duty, was not authorized to conduct the Article 15 action against a reservist on active duty; and (c) DAS Schneider was not authorized to release the Plaintiff from active duty upon the recommendation of the DAADB. The issues of whether DAS Schneider was authorized to release him from active duty and whether BG Collins had the authority to conduct an Article 15 action are, at least in theory, procedural challenges to the Army's REFRAD actions because the Court can adjudicate these questions without reviewing the merits of the underlying rationale for the Army's actions.

 However, the supposed due process issues raised by the Plaintiff are another matter. The Plaintiff claims that his right to due process was violated because: (i) the Investigating Officer could not have prohibited him from contacting witnesses, (ii) he was denied the right of representation of counsel at his Article 15 proceeding, (iii) his commanding officer was not legally trained, and (iv) he could not have been found to have

made a false official statement that he was married in his application for married housing because, evidently, marriage laws are so complicated and vary so much from state to state that he could not have known that he was in fact not married. Even if, for the sake of argument, this Court were willing to accept the Plaintiff's highly suspect claim that he could not have known whether he was in fact married; or his avant-garde due process theory that, in order to instill rudimentary discipline among the rank-and-file, a commanding officer must be burdened with having to take unspecified legal courses in addition to his other pressing duties; or that the military is somehow precluded from preventing a service member under investigation for misconduct from engaging in witness tampering, this Court could not entertain any of his claims for two reasons. First, even if the Plaintiff did present genuine due process issues before this Court, he cannot state a claim for alleged due process violations, including his denial of counsel claim, resulting from an Article 15 action because non-judicial punishment, unlike a general court-martial, is not a formal criminal proceeding. *Compare Fairchild v. Lehman,* 814 F.2d 1555, 1558 (Fed.Cir.1987) *and Dumas v. United States,* 223 Ct.Cl. 465, 473–74, 620 F.2d 247 (1980) (Court of Claims may not review Article 15 actions for due process violations) *with Longval v. United States,* 41 Fed.Cl. 291, 295 (1998) (Court of Federal Claims may review court-martials for significant constitutional defects that deprived the plaintiff of due process). Instead, Article 15 of the UCMJ, 10 U.S.C § 815(a) codifies the authority of a commanding officer to punish service members for minor offenses, § 815(b), unless the service member demands a court-martial instead of non-judicial punishment. These proceedings are administrative, rather than criminal, in nature. *Middendorf v. Henry,* 425 U.S. 25, 31–32, 96 S.Ct. 1281, 47 L.Ed.2d 556 (1976). Therefore, due process rights under the Fifth Amendment do not attach to Article 15 actions. *Dumas,* 223 Ct.Cl. at 476, 620 F.2d 247.[4] Second, the claims that the

---

4. The Plaintiff cited *Dumas* in its reply brief for the proposition that this Court could review Article 15 actions for due process violations despite the fact that *Dumas,* as discussed above, clearly

held that due process rights under the Fifth Amendment do not attach to Article 15 actions accepted by a service member. Furthermore, even as a factual matter, the Plaintiff sought legal

investigative officer could not have forbidden the Plaintiff to contact witnesses and that the Plaintiff could not have stated falsely that he was married are nonjusticiable because the claims are a transparent attempt to attack the substantive merits of the Army's decision to release him from active duty even though the claims are presented under the supposed guise of the Fifth Amendment.

Furthermore, while the Plaintiff's claim that his commanding officer did not have the authority to impose non-judicial punishment under Article 15 is, at least in theory, a procedural challenge to his non-judicial punishment, it is nevertheless irrelevant to the disposition of this case. The ABCMR explicitly held that even if the Article 15 action was void the REFRAD action was still proper. "The applicant's moral or professional [dereliction] was established in the findings of the Army Regulation 15–6 investigation of his conduct which found that he violated several articles of the UCMJ. Therefore ... the applicant's separation for misconduct, moral or professional dereliction would remain a proper and equitable outcome [even] were the NJP action overturned." *AR* at 7. Even if this Court were to agree with the Plaintiff that his commanding officer did not have the authority to conduct an Article 15 proceeding against him, the Plaintiff would still be faced with the nonjusticiable determination of the ABCMR that his separation was warranted by the findings of the investigative officer. "To overturn the ABCMR's decision would require this Court to second-guess whether the officer should have been released...." *Walters v. United States,* 37 Fed.Cl. 215, 221 (1997). Had the Plaintiff's commanding officer imposed a monetary penalty as a consequence of the non-judicial punishment, such as a forfeiture in pay, the Court may well have reviewed the commanding officer's authority to impose non-judicial punishment. This Court has the authority to hear challenges of Article 15 actions that result in the imposition of monetary penalties. *Wales v. United States,* 14 Cl.Ct. 580 (1988), *aff'd,* 865 F.2d 268 (Fed.Cir.1988) (table). However, as a direct consequence of the Article 15 action itself, he only received a letter of reprimand and did not lose any payments to which he was entitled. Consequently, the Court will not address the issue of whether BG Collins had the authority to conduct an Article 15 action because it is not necessary to resolve any issue in this case.

■■ Therefore, the Court holds that the Plaintiff cannot state a claim in this Court for any of his challenges to his Article 15 action, and, to the extent that these issues require the adjudication of the substantive merits of his Article 15 action, the Plaintiff presents nonjusticiable issues, and the Court accordingly dismisses them. However, the Plaintiff's claim that DAS Schneider did not have the authority to separate him from the service is a justiciable controversy that this Court may resolve because, in so doing, the merits of the decision to release the Plaintiff from active duty need not be adjudicated.

### 2. TERA Status

The Plaintiff requests that this Court, in addition to directing the Army to reinstate him to active service, also direct the Army to place him in TERA status pursuant to the National Defense Authorization Act for Fiscal Year 1993, § 4403, 10 U.S.C. § 1293, note 1 ("TERA"), which provides for the voluntary retirement of warrant officers after 20 years of active duty. TERA at § 4403(b)(1)(C) provides that: "[d]uring the active force drawdown period, the Secretary of the Army *may* ... apply the provisions of section 1293 of such title to a warrant officer with at least 15 but less than 20 years of service by substituting 'at least 15 years' for 'at least 20 years' " (emphasis added).[5] TERA at

---

advice during the investigation, *AR* at 11, and the Plaintiff signed the Record of Proceedings of the Article 15 action which informed him of his right to consult with legal counsel and initialed the portion of the Record of Proceedings which stated that "[h]aving been afforded the opportunity to consult with my counsel, my decisions are as follows...." *AR* at 19.

**5.** 10 U.S.C. § 1293 provides that the Secretary *"may,* upon the warrant officer's request, retire a warrant officer of any armed force under his jurisdiction who has at least 20 years of active service...."

§ 4403(d) provides that the Secretary of the Army "may prescribe regulations and policies regarding the criteria for eligibility for early retirement...." At the time of his separation, the Plaintiff had served over 15 years of active duty in the Active Guard/Reserve Program, and was officially notified of his eligibility for TERA status by letter on May 28, 1997. Def.'s Mot. at App. A.

▮▮▮ For whatever reason, the Plaintiff did not seek early retirement under TERA when he was eligible and now, with the benefit of hindsight, seeks the Court to rectify this mistake. However, even if, for the sake of argument, the Army should have placed him in TERA status rather than releasing him from active duty, this Court cannot order the Army to do so because the TERA statute presents a nonjusticiable claim. As a matter of statutory construction, the word "may" usually connotes permissive discretion, as opposed to the word "shall" which connotes a mandatory task. *Andersen Consulting v. United States,* 959 F.2d 929, 932 (Fed.Cir.1992). In Title 10, Congress specifically defined the terms "shall" and "may" in an "imperative sense" and a "permissive sense," respectively. 10 U.S.C. § 101(e)(1)–(2). "By using the permissive "may," the statute indicates that the decision to grant retirement is discretionary." *Cedillo v. United States,* 124 F.3d 1266, 1268 (Fed.Cir. 1997), *cert. denied,* 522 U.S. 1060, 118 S.Ct. 718, 139 L.Ed.2d 658 (1998). There can be little doubt that the wide discretion conveyed by the statute to permit the Secretary of the Army to grant TERA status to a warrant officer precludes judicial review of the merits of a decision to either grant or deny TERA status to a particular individual. *See Greek v. United States,* 44 Fed.Cl. 43, 48 (1999).

The Plaintiff, in a vain attempt to forestall the inevitable, points to 10 U.S.C. § 12686, which provides that: "[u]nder regulations to be prescribed by the Secretary concerned ... a member of a reserve component on active duty ... and is within two years of becoming eligible for retired pay ... may not be involuntarily released from that duty before he becomes eligible for that pay, unless the Secretary approves his release." 10 U.S.C. § 12686. Because, according to the Plaintiff, the Army had not promulgated any regulations that implemented TERA under 10 U.S.C. § 1293, note 1, the Army was not entitled to release him from active duty because he was already eligible for retirement pay pursuant to TERA. However, the Plaintiff's argument is wrong in part because, under 10 U.S.C. § 12686, a reservist may be involuntarily released from active duty within two years of retirement if "the Secretary approves his release." As this Court shall hold, *infra* § IV, the Secretary, through his designee, did properly approve his release from active duty. As such, no conflict exists between 10 U.S.C. § 12686 and TERA authority under 10 U.S.C. § 1293, note 1. However, even if a conflict between the two statutes did exist, the conflict still could not convert an otherwise nonjusticiable controversy into a justiciable one insofar as the application of TERA is, as stated above, entirely discretionary.

Therefore, the Plaintiff's TERA claim does not present a justiciable controversy before this Court. Accordingly, the Plaintiff's TERA claim is dismissed.

### III. Standard of Review

The Plaintiff has the burden of proving that the Secretary of the Army's decision to release him from active duty and not grant him separation pay and the ABCMR's decision to deny him relief were arbitrary, capricious, in bad faith, unsupported by substantial evidence, or contrary to law, regulation, or published procedure. *Sanders v. United States,* 219 Ct.Cl. 285, 298, 594 F.2d 804 (1979); *Wyatt v. United States,* 23 Cl.Ct. 314, 319 (1991). Judicial review in a wrongful discharge case is usually limited to the administrative record before the deciding official. *Wyatt,* 23 Cl.Ct. at 319. In reviewing the record, there is a strong presumption that the military officials acted correctly, lawfully, and in good faith. *Sanders,* 219 Ct.Cl. at 302, 594 F.2d 804.

### IV. The Secretary of the Army Properly Released the Plaintiff Through His Designee.

▮▮▮ The Secretary of the Army is authorized to release a reservist under his juris-

diction at any time. 10 U.S.C. § 12313. Pursuant to this authority and his general authority under 10 U.S.C. § 3013(g)(3) to "prescribe regulations to carry out his functions, powers, and duties under this title," the Secretary of the Army promulgated Army Reg. 600–8–24, *Officer Transfers and Discharges,* dated July 21, 1995. Under this regulation, the Secretary of the Army authorized the Director, Army Council of Review Boards, to operate the DAADB as a "tool for ensuring that only an RC [Reserve Component] officer who consistently maintains high standards of performance, efficiency, morality, and professionalism is permitted to serve on active duty." To that end, the regulation provides that "[a]pproval authority to release or retain an officer ... is the Secretary of the Army or his or her designated representative." Army Reg. 600–8–24 ¶ 2–31(a). General Order No. 10 of the Secretary of the Army, dated August 12, 1997, ¶ 8, assigned the Assistant Secretary of the Army (Manpower and Reserve Affairs) ("ASA M & RA") with general responsibility of personnel matters of the U.S. Army, including, pursuant to ¶ 81 of the Order, authority over the Department of the Army Military Review Boards and the Army Council of Review Boards. Def.'s Mot. at App. Ex. C. Under 10 U.S.C. § 3016(b)(2), his duties include "the overall supervision of manpower and reserve component affairs of the Department of the Army." The authority over the Army Council of Review Boards, including the Army Active Duty Board (Qualitative) was delegated, in a memo dated October 27, 1997, by the ASA M & RA to DAS (Army Review Boards Agency) Karl Schneider. Def.'s Mot. at App. Ex. D. The Plaintiff has not pointed to anything in the record that shows DAS Schneider did not have the proper authority to release him from active duty or that anyone else had that authority. Thus, it is clear that DAS Schneider was the properly designated representative of the Secretary of the Army, pursuant to Army Reg. 600–8–24 ¶ 2–31(a) and the October 27, 1997 delegation memo, to oversee the functions of the DAADB and to release the Plaintiff from active duty, pursuant to Army Reg. 600–8–24 ¶ 2–31.

The Plaintiff argues, however, that under 10 U.S.C. § 3013(f), which provides that the Secretary of the Army "may assign such of his functions, powers, and duties as he considers appropriate to the Under Secretary of the Army and to the Assistant Secretaries of the Army," does not allow for any delegation of the Secretary's authority to release a reservist from active duty to a Deputy Assistant Secretary of the Army because the statute is silent on the authority of Assistant Secretaries of the Army to delegate the Secretary's functions to Deputy Assistant Secretaries of the Army. If this Court were to accept the Plaintiff's argument as such, by implication then, none of the Secretary's functions, powers, or duties, could ever be delegated to anyone beyond the Assistant Secretaries of the Army. More to the point, the statutory authority of the Secretary under 10 U.S.C. § 3013(g)(3) to "prescribe regulations to carry out his functions, powers, and duties under this title" is a sufficient basis for the Secretary to promulgate the pertinent section of Army Reg. 600–8–24 which provides that a "designated representative" may make the final decision to release a reservist from active duty. Army Reg. 600–8–24 ¶ 2–31(a). Finally, in order to prevail in his argument, the Plaintiff must "overcome the strong, but rebuttable, presumption that administrators of the military, like other public officials, discharge their duties correctly, lawfully, and in good faith." *Sanders,* 219 Ct.Cl. at 302, 594 F.2d 804. The Plaintiff has not provided sufficient evidence that would rebut the presumption that the Assistant Secretary of the Army possessed the lawful authority to delegate separation authority to DAS Schneider and that DAS Schneider was in fact the designated representative of the Secretary of the Army to make the final decision to release the Plaintiff from active duty.

Therefore, the Court finds that the Secretary of the Army, through his designee, properly released the Plaintiff from active duty.

## V. The Denial of Separation Pay Was Not Arbitrary, Capricious, or Contrary to Applicable Statutes and Regulations.

 The Plaintiff maintains that he is entitled to separation pay under 10 U.S.C.

§ 1174(c)(1). Section 1174(c)(1) provides that a member "of an armed force other than a regular member who is discharged or released from active duty and who has completed six or more, but fewer than 20, years of active service ... is entitled to separation pay." However, the statute further provides that "[i]f the Secretary concerned determines that the conditions under which a [reservist] is discharged or separated do not warrant separation pay under this section, that member is not entitled to that pay." 10 U.S.C. § 1174(c)(2). The Plaintiff was released from active duty pursuant to Army Reg. 600–8–24 ¶ 2–31c–d, in which the DAADB may release a reserve component officer if he has less than 18 years of active federal service on the projected separation date and there are "demonstrated significant acts or conditions of misconduct or moral or professional dereliction." Army Reg. 600–8–24 ¶ 2–31r further provides that, with exceptions not relevant here, "[w]hile separations under this section are involuntary, there is no entitlement to separation pay." Because the Plaintiff was separated from active duty by the Army for engaging in acts of misconduct or moral or professional dereliction, and the Secretary of the Army determined, through Army Reg. 600–8–24, that reservists released from active duty for such acts are not entitled to separation pay, the ABCMR correctly denied the Plaintiff's request for separation pay.

The Plaintiff points to Department of Defense Instruction (DODI) 1332.29, *Eligibility of Regular and Reserve Personnel for Separation Pay*, dated June 20, 1991, ¶ 3.4.10, which provides that a regular service member separated from active duty is not eligible for separation pay if he is "an officer who is separated for substandard performance or acts of misconduct or moral or professional dereliction under Section 1166 or 1186 of 10 U.S.C." Def.'s Mot. at App. Ex. 5. Because this regulation does not make reserve officers separated for acts of misconduct or moral or professional dereliction ineligible for separation pay, so the Plaintiff argues, he is entitled to separation pay. However, the lack of any provision in DODI 1332.29 denying separation pay for reserve officers separated for acts of misconduct or moral or

professional dereliction is not relevant because the Secretary of the Army has, through Army Reg. 600–8–24 ¶ 2–31r, determined that reservists separated for such acts are not entitled to separation pay. The Plaintiff further argues that Army Reg. 600–8–24 is void because the regulation is inconsistent with 10 U.S.C. § 1174 since the regulation permits the DAADB to deny separation pay to a reservist, such as the Plaintiff, who receives an honorary characterization of service. This argument is completely meritless. The statute, pursuant to section 1174(c)(2), clearly gives the Secretary the discretion to establish criteria under which a reservist would not be eligible for separation pay and, under the established criteria, the Plaintiff is plainly not entitled to separation pay because he was separated for misconduct.

## VI. Conclusion

The Defendant's motion to dismiss is GRANTED in part, and its motion for judgment upon the administrative record is GRANTED in part. The Plaintiff's motion for judgment upon the administrative record is DENIED. The Clerk of the Court is directed to enter judgment in favor of the Defendant and to dismiss the complaint.