Robert W. CLARY, Jr., Plaintiff,

v.

The UNITED STATES, Defendant.

No. 98–107C.

United States Court of Federal Claims.

April 18, 2002.

William Cassara, of Evans, Georgia, for plaintiff.

Patrick T. Murphy, Commercial Litigation Branch, with whom were James M. Kinsella, Assistant Director, David M. Cohen, Director, and Frank W. Hunger, Assistant Attorney General, U.S. Department of Justice, of Washington, D.C., for defendant.

## OPINION

SMITH, Senior Judge.

The liberty and prosperity that Americans have enjoyed during much of our history has been guaranteed by the brave members of the United States' armed forces. The military and its members have again and again put themselves in mortal danger so that America and Americans could be safe and free. This has been our blessing since the dawn of our Republic in 1776. It is very real to us today as our forces put themselves at great risk fighting terror in the mountains of Afghanistan.

The courts have been cognizant of the vital mission of our armed forces. They have given great deference to the commanders of our forces in the personnel decisions that they must make; many of them hard decisions that must not be second guessed. In this case, however, we have an anomaly. Mr. Clary was retained in the Navy by the Navy. If he had left he could have received an honorable discharge and his retirement pay. But the decision to stay in the Navy, a decision made with the Navy's concurrence, led to a less than honorable discharge and the loss of retirement benefits. This is particularly anomalous since the misconduct that began this case occurred before the retention was authorized by the Navy. While the courts must allow the military to decide who is to defend our Nation, once that decision is made the courts must protect the rights of military personnel to the benefits they have earned. The decision in this case does not limit the Navy's discretion over its operations in anyway. It only requires the Navy to separate those it does not want in a way consistent with both the statutes established by the Congress and fairness towards the individual.

This case is before the court on defendant's Motion to Dismiss for failure to state a claim upon which relief can be granted or alternatively for Judgment upon the Admin-

istrative Record. Plaintiff cross-motioned for Judgment upon the Administrative Record. After reviewing the briefs, the court hereby DENIES defendant's motions and GRANTS plaintiff's Cross–Motion for Judgment upon the Administrative Record.

## FACTS

Plaintiff joined the United States Navy on June 2, 1978, and remained on active duty until May 31, 1994. During his service, plaintiff was rapidly promoted until he achieved the rank of Lieutenant Commander in 1987. During the period from 1978 to 1987, he received consistent outstanding ratings from his superior officers.

In December 1990, plaintiff began a relationship with a woman who was not his wife. On January 29, 1991, as a result of this relationship, plaintiff received his first nonjudicial punishment (Mast) and a letter of reprimand for conduct unbecoming an officer. On October 1, 1992, plaintiff received a second Mast for failure to obey an order and adultery. Following, this second Mast, a Board of Officers convened and found that sufficient evidence of misconduct and substandard performance existed to require plaintiff to "show cause" for retention in the Navy. A Board of Inquiry met on April 22–23, 1993, and recommended that plaintiff receive a general discharge from the Navy. A Board of Review met in August 1993 and upheld the finding and recommendation of the Board of Inquiry.

While the Board's recommendation was being reviewed, the plaintiff failed for a second time to be promoted. In July 1993, plaintiff was notified that officers who had been passed over twice were required to be discharged within six months unless they applied and were accepted for continuation of active duty. On August 10, 1993, plaintiff spoke to his civilian personnel officer (CPO) about continuation on active duty and his eligibility for early retirement. His CPO spoke to a Lieutenant and plaintiff's personal detailer, both of whom told the CPO that plaintiff should be eligible for early retirement whether he was continued or not. The CPO relayed that information to the plaintiff. Based on this information, plaintiff promptly applied for a continuation on active duty through August 1994.

In a letter dated October 22, 1993, the Navy notified plaintiff that he had been selected for continuation on active duty. Plaintiff was also warned that he had been identified as an officer who should be required to show cause for retention, but that separation processing was not appropriate at that time. The Navy informed the plaintiff that if he declined continuation at that time, he would receive an Honorable Discharge and might be entitled to full separation pay or early retirement. Finally, the Navy warned plaintiff that if he elected to continue his service, he might receive a General or Less than Honorable Discharge, receive an adverse separation code, and lose entitlement to retirement or separation pay. Despite these warnings, Plaintiff accepted continuation of active duty on October 26, 1993.

In a February 18, 1994, letter the Navy recommended that plaintiff receive a General Discharge. He was subsequently discharged on May 31, 1994. Plaintiff applied for a review of his discharge to the Board of Correction for Naval Records on March 14, 1995. The board denied plaintiff's petition on February 26, 1996. The Board found that the evidence did not establish the existence of material error or injustice.

Plaintiff filed this case on February 11, 1998. Plaintiff seeks a change of status to that of retirement with an honorable discharge with related financial benefits and record corrections. Plaintiff alleges that several temporary and permanent provisions of law entitled him to retire in lieu of a discharge.

Defendant moved to dismiss under RCFC 12(b)(4) for failure to state a claim upon which relief can be granted, or alternatively, for judgment upon the administrative record. Plaintiff cross-moved for judgment upon the administrative record. Oral Argument was held on defendant's Motion to Dismiss.

## DISCUSSION

### I. JURISDICTION

The United States is immune from suit unless Congress specifically waives the government's sovereign immunity. *See United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *Soriano v. United States*, 352 U.S. 270, 276, 77 S.Ct. 269, 1

L.Ed.2d 306 (1957). The Tucker Act waives the government's sovereign immunity and allows a plaintiff to bring suit in the Court of Federal Claims seeking "judgment upon any claim against the United States founded ... upon ... any Act of Congress." 28 U.S.C. § 1491 (1994 & Supp.2001). Because the plaintiff is seeking monetary relief, this court has Tucker Act jurisdiction over this dispute. While this court does not have jurisdiction over claims based upon voluntary military retirements, it does have jurisdiction to review disputes when a service member is "remov[ed] from a position to which he has been duly appointed..." *Rice v. United States,* 31 Fed.Cl. 156, 163 (1994). *See also United States v. Wickersham,* 201 U.S. 390, 26 S.Ct. 469, 50 L.Ed. 798 (1906), *Testan,* 424 U.S. at 402, 96 S.Ct. 948.

## II. STANDARD OF REVIEW

RCFC 12(b)(4) requires the court to dismiss a complaint if, assuming the truth of all allegations, the complaint fails to state a claim upon which relief may be granted as a matter of law. In ruling upon a motion to dismiss, a court must grant the motion "when the facts asserted by the plaintiff do not entitle him to a legal remedy." *Boyle v. United States,* 200 F.3d 1369, 1372 (Fed.Cir. 2000). *See also Moyer v. United States,* 190 F.3d 1314, 1317–18 (Fed.Cir.1999); *N.Y. Life Ins. Co. v. United States,* 190 F.3d 1372, 1377 (Fed.Cir.1999). In addition, the court must "accept all well-pleaded factual allegations as true and draw all reasonable inferences" in the plaintiff's favor. *Boyle,* 200 F.3d at 1372. *See also Perez v. United States,* 156 F.3d 1366, 1370 (Fed.Cir.1998).

## III. THE TEMPORARY EARLY RETIREMENT AUTHORITY (TERA) OF THE 1993 NATIONAL DEFENSE AUTHORIZATION ACT.

### A. Background

This dispute centers on plaintiff's claim that he should have been retired under 10 U.S.C. § 1186(b)(1)[1] rather than discharged by the Navy. Plaintiff argues that under Section 4403 of the FY94 National Defense Authorization Act, the so-called Temporary Early Retirement Authority (TERA), he should have been retired because it lowered retirement eligibility to fifteen years. Plaintiff also asserts that he was eligible for TERA under the original instructions of the Secretary and that later changes to eligibility under TERA are contrary to Section 1186 and do not apply to him. Finally, he argues that he was orally advised and relied on the assurances of Naval personnel specialists to his detriment that he would be eligible for retirement under TERA even if he accepted continuation.

The government counters that the Secretary of the Navy had unfettered discretion to retire plaintiff under TERA. In addition, the government argues that the Secretary could prescribe eligibility regulations to implement TERA, including denial of retirement to officers like plaintiff who were undergoing administrative separation proceedings. Finally, the government contends that plaintiff had notice he could be discharged rather than retired because the Chief of Naval Operations sent him a letter warning him that he could be discharged if he stayed and faced another Board.

The courts may review the procedures of the military, but "[j]udicial deference to administrative decisions of fitness for duty of service member is and of right should be the norm." *Maier v. Orr,* 754 F.2d 973, 984 (Fed.Cir.1985). Indeed, the military has great discretion in determining who will serve in it and at what point they will no longer be able to serve. *See Murphy v. United States,* 993 F.2d 871 (Fed.Cir.1993) and *Orloff v. Willoughby,* 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842 (1953). The court now turns its attention to the legislation at question in this dispute.

---

1. An officer removed from active duty for substandard performance or misconduct by a Board of Review "shall ... if eligible for voluntary retirement under any provision of law on the date of such removal, be retired in the grade and with the retired pay for which he should be eligible if retired under such provision." 10 U.S.C. § 1186(b)(1) (1998 & Supp.2001). This provision was in all versions of the Defense Office Personnel Management Act as debated in Congress and passed into law on December 12, 1980. *See* Pub.L. No. 96–513, 94 Stat. 2835, 2875 (1980).

## B. TERA & Section 1186:

Congress incorporated the Temporary Early Retirement Authority (TERA) as part of the National Defense Authorization Act for Fiscal Year 1993 (the "Act"). TERA provided the Secretary of Defense with a "temporary additional force management tool with which to effect the drawdown of military forces through 1995." Pub.L. No. 102–484 at § 4403(a). One of TERA's provisions gave the Secretaries of the military branches authority to lower the number of years of service required for an officer to be eligible to retire from 20 to 15 years.

The parties disagree about how much discretion TERA gave the military. The plaintiff argues that the language of the statute was discretionary only to the point that the Secretary of Navy decided to utilize the statutory scheme. Once he did that, he was limited to follow the selection criteria outlined in § 4403(d): grade, years of service, and skill.[2] In contrast, the defendant argues that TERA was by its construction discretionary: 1) the Secretary could choose whether or not to utilize TERA and 2) the Secretary could choose which criteria to use when applying TERA to those eligible for retirement. Further, defendant alleges that the plaintiff was not eligible for retirement, a critical precursor to utilizing TERA. At most, defendant says plaintiff was eligible to be considered for retirement at the discretion of the Secretary and the President.[3]

When this Court has considered TERA in situations similar to plaintiff's, the court has found that TERA is a discretionary statute. In one case, a Coast Guard officer was twice passed over for promotion and claimed the benefits of TERA through a statute worded similarly to 10 U.S.C. § 1186(b)(1). *See Greek v. United States*, 44 Fed.Cl. 43 (1999). The Court held "since the implementation of the ... program was itself discretionary, even its retroactivity ... would not have compelled [plaintiff's] retirement." *Id.* at 48.

This court again addressed TERA in *McMullen v. United States*, 50 Fed.Cl. 718 (2001). *McMullen* involved a former chief warrant officer who wanted to be reinstated and then retired under TERA. However, the court stated, "[t]here can be little doubt that the wide discretion conveyed by the statute to permit the Secretary of the Army to grant TERA status to a warrant officer precludes judicial review of the merits of a decision to either grant or deny TERA status to a particular individual. *See Greek v. United States...*" *McMullen*, 50 Fed.Cl. at 725. Thus, plaintiff's claim that he was improperly discharged under TERA must fail.

This court, however, has not addressed the question plaintiff raises regarding the application of 10 U.S.C. § 1186 to his separation. The language of § 1186 is clear:

> "An officer removed from active duty under section 1184 of this title shall—(1) if eligible for voluntary retirement under any provision of law on the date of such removal be retired in the grade and with the retired pay for which he would be eligible if retired under such provision..."

10 U.S.C. § 1186(b) (1998 & Supp.2001). Section 1184 addresses the removal of officers by a board of review. Both Section 1184 and Section 1186 apply to plaintiff because he was removed from the military by a board of review and was eligible for retirement under the TERA amendment to Section 6323.

■ Where there is tension between two related statutes, the court must consider the individual statutes in the context that Congress placed them. *See Davis v. Michigan Dept. of Treasury*, 489 U.S. 803, 809, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme"). The court must first "determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in

---

2. "REGULATIONS.—The Secretary of each military department may prescribe regulations and policies regarding the criteria for eligibility for early retirement by reason of eligibility pursuant to this section and for the approval of applications for such retirement. Such criteria may include factors such as grade, years of service, and skill." § 4403(d).

3. Indeed, the defendant states that it is only at 40 years that retirement becomes a right. *See* 10 U.S.C. § 6321 (1998 & Supp.2001).

the case." *Robinson v. Shell Oil Co.,* 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997) (*citing United States v. Ron Pair Enter., Inc.,* 489 U.S. 235, 240, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989)). When analyzing two statutes, the section with the mandatory language prevails over that which is permissive. *See* William N. Eskridge, Jr., *et al., Legislation and Statutory Interpretation* 258–259 (2000); J.G. Sutherland, *Statues and Statutory Construction* §§ 25.01–25.04 (Norman J. Singer, ed., 6th ed.2001); Earl T. Crawford, *The Construction of Statutes* (1940).

In Title 10, Congress specifically defined "shall" in the imperative sense and "may" in the permissive sense. *See* 10 U.S.C. § 101(e)(1) & (2) (1998 & Supp.2001). In other words, where Congress used "may" rather than "shall", it allowed the military to determine whether it would act. In TERA, Congress simply granted authority to the Secretary of the Navy to implement TERA, but he was not required to do so. Likewise, he could use—but was not required to use— certain factors such as grade and skill to determine who was eligible for TERA.

■ Unlike the language in TERA, the court finds that Congress told the Secretaries of the military branches that they "shall" retire those who were eligible under Section 1186. Congress removed any discretion the Secretaries may have otherwise had to retire those officers who are eligible at the time of their separation. Therefore, the Secretary of the Navy could not ignore Congress' directive in Section 1186 that officers like plaintiff who met the criteria outlined in that section must be retired. The plaintiff had accumulated more than the fifteen years of service required under the TERA amendment to 10 U.S.C. § 6323 and should have been retired under Section 1186. Thus, the Navy erred when it discharged rather than retired the plaintiff.

### C. Detrimental Reliance

Because the court finds that plaintiff should have been retired under Section 1186 rather than discharged, it is unnecessary for the court to address plaintiff's detrimental reliance argument. Generally, employment decisions are considered voluntary by this court. *See, e.g. Scharf v. Dep't of the Air Force,* 710 F.2d 1572 (Fed.Cir.1983) (retirement decision); *Covington v. Dept. of Health and Human Services,* 750 F.2d 937, 941 (Fed.Cir.1984). However, this assumption is rebuttable in certain circumstances including when the employee made his decision based on misinformation from the agency in question. *See Covington,* 750 F.2d at 942; *Bergman v. United States,* 28 Fed.Cl. 580, 585 (1993). While the assumption may be rebuttable, the Supreme Court has been reluctant to open the door to estoppel and other claims based on misinformation given by government employees. *See Office of Personnel Management v. Richmond,* 496 U.S. 414, 433–34, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990) ("To open the door to estoppel claims would only invite endless litigation over both real and imagined claims of misinformation...").

Here the record is clear that the Navy's policy regarding TERA retirement of officers subject to separation proceedings was far from final at the time Mr. Clary exercised his choice to stay on active duty and face the second Board. Indeed, Navy personnel officers affirmatively advised Mr. Clary that he would be eligible for TERA and failed to correct his misunderstanding on the issue when he accepted continuation. Mr. Clary was clearly prejudiced by such actions. *Cf. United States v. Davis,* 52 M.J. 201 (Armed Forces 1999) (accused in a court-martial was prejudiced by military counsel's statements regarding TERA eligibility). To officers in plaintiff's position their personal detailer speaks for the Navy on personnel policy. However, the extent of allowable detrimental reliance against the government is questionable. *See Richmond,* 496 U.S. at 433, 110 S.Ct. 2465. In any event, the issue need not be considered here.

### RELIEF

Plaintiff's record shall be corrected to show that he was retired under 10 U.S.C. § 1186 and he shall receive back pay and interest for the period between his separation and the time he is placed on retirement.

Each party shall bear its costs.

It is so ORDERED.