Robert W. CLARY, Jr.,
Plaintiff–Appellee,

v.

UNITED STATES, Defendant–
Appellant.

No. 02–5133.

United States Court of Appeals,
Federal Circuit.

June 24, 2003.

William E. Cassara, of Evans, GA, argued for plaintiff-appellee.

Patrick T. Murphy, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for defendant-appellant. With him on the brief were Robert E. McCallum, Assistant Attorney General; David M. Cohen, Director; and James M. Kinsella, Deputy Director. Of counsel was Lt. Warren A. Record, Attorney, Department of the Navy, of Washington, DC.

Before BRYSON, GAJARSA, and DYK, Circuit Judges.

Opinion for the court filed by Circuit Judge GAJARSA. Concurring-in-part and dissenting-in-part opinion filed by Circuit Judge BRYSON.

GAJARSA, Circuit Judge.

In the present action, the United States appeals an order of the Court of Federal Claims ruling that Robert W. Clary, Jr. was illegally discharged from military service; correcting Mr. Clary's record to show that he was retired under 10 U.S.C. § 1186(b)(1); and granting Mr. Clary back pay and interest for the period between his separation and the time he was placed on retirement. *Clary v. United States,* 52 Fed.Cl. 390, 394 (2002). Because the Court of Federal Claims correctly determined Mr. Clary was entitled to retire under 10 U.S.C. § 1186(b)(1), but incorrectly granted Mr. Clary interest for the period between his separation and the time he was placed on retirement, we affirm-in-part and reverse-in-part.

I.

Mr. Clary joined the United States Navy on June 2, 1978 and remained on active duty until May 31, 1994. He achieved the rank of Lieutenant Commander in 1987. In 1990, Mr. Clary began an extra-marital relationship with the woman that is currently his wife. On January 29, 1991, as a result of this relationship, Mr. Clary received his first non-judicial punishment ("Mast") and a letter of reprimand for conduct unbecoming an officer.[1] Despite the first Mast, Mr. Clary continued this extra-marital relationship and on October 2, 1992, he received a second Mast for adultery and failure to obey an order. Following this second Mast, a Board of Officers convened and determined that sufficient evidence of misconduct and substandard performance existed to require Mr. Clary to "show cause" for retention in the Navy. Consistent with Navy procedures, a Board of Inquiry ("BOI") met in April 1993 and recommended Mr. Clary receive a general discharge from the Navy. A Board of Review met in August 1993 and upheld the finding and recommendation of the BOI.

While the BOI's recommendation was being reviewed, Mr. Clary failed for a second time to be promoted. In July 1993, Mr. Clary was notified that officers who had been passed over twice were required to be discharged within six months unless they applied and were accepted for continuation of active duty. On August 10, 1993, Mr. Clary spoke to his civilian personnel officer ("CPO"), Mr. Moffett, about continuation on active duty and his eligibility for early retirement. Mr. Moffett, in turn, spoke to a Lieutenant Biron, the Officer in charge of the Navy's Continuation Board Section and Mr. Clary's personal detailer, Lieutenant Commander Smith. Both Lieutenant Biron and Lieutenant Commander Smith told Mr. Moffett that Mr. Clary should be eligible for early retire-

---

**1.** "Mast" is an administrative proceeding where a senior officer in the chain of command can impose non-judicial punishment ("NJP") for disciplinary offenses that do not rise to the level of a court-martial. It is also referred to as Captain's or Admiral's Mast depending upon the rank of the individual leading the proceeding.

ment regardless of whether he was selected for continuation of his duties. Mr. Moffett relayed that information to Mr. Clary. Based on this information, Mr. Clary promptly applied for a continuation of active duty through August 1994.

In a letter dated October 22, 1993, the Navy notified Mr. Clary that he had been selected for continuation of active duty. Mr. Clary was also warned that he had been identified as an officer who should be required to show cause for retention, but that separation processing was not appropriate at that time. The Navy informed Mr. Clary that if he declined continuation, he would receive an Honorable Discharge and might be entitled to full separation pay or early retirement. Finally, the Navy warned Mr. Clary that if he elected to continue his service, he might receive a general or less than honorable discharge, receive an adverse separation code, and lose entitlement to retirement or separation pay. Despite these warnings, Mr. Clary accepted continuation of active duty on October 26, 1993.

In a February 18, 1994 letter, the Navy recommended that Mr. Clary receive a general discharge. He was subsequently discharged on May 31, 1994. Mr. Clary applied for a review of his discharge to the Board of Correction for Naval Records ("Board") on March 14, 1995. The Board denied Mr. Clary's petition on February 26, 1996, finding that the evidence did not establish the existence of material error or injustice.

While the Navy and Mr. Clary were addressing Mr. Clary's disciplinary issues, Congress, as a part of the National Defense Authorization Act for Fiscal Year 1993, enacted the Temporary Early Retirement Authority ("TERA"). Pub.L. No. 102–484, § 4403(a), 106 Stat. 2315 (1993). TERA provided the Secretary of Defense with a "temporary additional force management tool with which to affect the drawdown of military forces through 1995." *Id.* One of TERA's provisions gave the Secretaries of the military branches temporary authority to lower the number of years of service required for an officer to be eligible to retire from twenty to fifteen years.[2]

In July 1993, the Navy elected to utilize TERA to facilitate drawdown of the Navy's forces. To implement TERA, the Chief of Naval Operations issued Administrative Message ("NAVADMIN") 111/93 setting forth the eligibility requirements for TERA. NAVADMIN 111/93 stated as follows:

This NAVADMIN implements the Navy FY–94 15 year early retirement fleet reserve program for eligible officers and enlisted members. It is not an entitlement but a temporary early retirement authority (TERA), authorized until 30 Sep 95 to help facilitate personnel drawdown ... TERA offers early retirement at a somewhat reduced monthly stipend to eligible [members] prior to completing twenty years active duty service. Officers and enlisted with at least 15 years active duty service between 1 Oct

---

**2.** (a) PURPOSE—The purpose of this section is to provide the Secretary of Defense a temporary additional force management tool with which to effect the drawdown of military forces through 1995.

(b) RETIREMENT FOR 15 TO 20 YEARS OF SERVICE—...

(2) During the active force drawdown period, the Secretary of the Navy may—

(A) apply the provisions of section 6323 of title 10, United States Code, to an officer with at least 15 but less than 20 years of service by substituting "at least 15 years" for "at least 20 years" in subsection (a) of that section ....

Pub.L. No. 102–484, § 4403(a).

93 and 30 Sep 94 may be eligible for TERA.... This voluntary offering is limited by competitive category/grade/rate/rating with caps for each.... Since TERA is not an entitlement, all eligible members may not be approved.

NAVADMIN 111/93 also specifically defined the officer eligibility requirements for TERA.

2. Officer *Eligibility* Requirements. Any officer, regular or reserve on the active duty list (ADL), with between 15 and 20 years of active duty, who is required to be separated for failure of selection (FOS) for promotion to the next higher grade may apply for TERA. These officers must have over 15 [years of service] before the date on which they would be required by law to be involuntarily separated from active duty. In addition to this broad category, only the following specific categories are *eligible:*

\* \* \*

C. Lieutenant Commanders in the following categories only:

2. [Lieutenant Commanders] who have two or more FOS to 0–5, who will have between 15 and 20 [years of service] as of 30 Sep 94, will be required to apply for the early retirement program (to retire no later than 1 Sep 94).

(Emphasis added.)

Mr. Clary filed suit in the Court of Federal Claims on February 11, 1998. He sought a change of status from a general discharge to that of retirement with an honorable discharge with related financial benefits and record corrections. In particular, he alleged that 10 U.S.C. § 1186(b)(1) and TERA entitled him to retire in lieu of a discharge. Specifically, he argued that he was "eligible" for retirement under TERA, and therefore should have been retired, with benefits pursuant to 10 U.S.C. § 1186(b)(1).

The Court of Federal Claims agreed and determined that under 10 U.S.C. § 1186, Mr. Clary was entitled to a correction of his record to show that he was retired under 10 U.S.C. § 1186(b)(1) and that he receive back pay and interest for the period between his separation and the time he was placed on retirement.

The United States filed this appeal over which we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

## II.

■ The primary issue in this appeal is the interrelationship between 10 U.S.C. § 1186 and TERA. We must determine whether the Court of Federal Claims erred in interpreting 10 U.S.C. § 1186(b)(1) as mandating retirement of an officer under the provisions of TERA, a temporary force reduction tool. We review issues of statutory interpretation *de novo*. *O'Connor v. United States*, 308 F.3d 1233, 1239 (Fed.Cir.2002); *Cathy v. United States*, 191 F.3d 1336, 1338 (Fed. Cir.1999). To interpret a statute we first look to the statutory language and then to the legislative history if the statutory language is unclear. *Allen v. Principi*, 237 F.3d 1368, 1375 (Fed.Cir.2001); *Rigsbee v. United States*, 226 F.3d 1376, 1378–79 (Fed.Cir.2000); *Madison Galleries, Ltd. v. United States*, 870 F.2d 627, 629 (Fed.Cir. 1989). We must first "determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997). "Our inquiry must cease if the statutory language is unambiguous and 'the statutory scheme is coherent and consistent.'" *Id.*

## A.

■ The pertinent statute which we need to interpret is title 10, section 1186(b) of the United States Code. It states:

An officer removed from active duty under section 1184 of this title shall—(1) if *eligible* for voluntary retirement *under any provision of law* on the date of such removal, be retired in the grade and with the retired pay for which he would be eligible if retired under such provision ....

10 U.S.C. § 1186(b) (2000) (emphases added). One such "provision of law" is 10 U.S.C. § 6323(a)(1), which provides that "[a]n officer of the Navy ... who applies for retirement after completing more than 20 years of active service ... may, in the discretion of the President, be retired ...." The Court of Federal Claims determined that " '[b]oth section 1184 and section 1186 apply to plaintiff because he was removed from the military by a board of review and was eligible for retirement under the TERA amendment to Section 6323.' " *Clary*, 52 Fed. Cl. at 393. We agree. Section 1184 addresses the removal of officers by a Board of Review. 10 U.S.C. § 1184. On its face, section 1186(b)(1) is a mandatory statute requiring retirement pay for an officer if he or she is "eligible for voluntary retirement under any provision of law." *Id.* TERA plainly amended this twenty-year requirement to fifteen years. Absent an ambiguity, our interpretation ends here. *See Robinson*, 519 U.S. at 340, 117 S.Ct. 843. Neither party asserts this section is ambiguous. Moreover, section 1186(b)(1) unquestionably applies to a service member with twenty years of active service. Since TERA merely amended the twenty-year requirement of section 6323(a)(1), it follows that section 1186(b)(1) must apply with equal force to eligibility under TERA. Therefore, if an officer was eligible pursuant to the twenty-year requirement under section 6323(a)(1), TERA simply amended that requirement to fifteen years. Indeed, at oral argument, the government was incapable of distinguishing between the applicability of section 1186(a)(1) to issues of retirement after twenty years pursuant to section 6323(a)(1) and fifteen years pursuant to TERA. Accordingly, if Mr. Clary is "eligible" for voluntary retirement under TERA, section 1186(b)(1) mandates he be "retired in the grade and with the retired pay for which he would be eligible if retired under such provision." 10 U.S.C. § 1186(b). Thus our inquiry turns to Mr. Clary's eligibility under TERA.

## B.

■ Both parties argue for different definitions of the term "eligible" under TERA. The United States contends that the term "eligible" means "entitled to" or "vested," and since TERA was discretionary, Mr. Clary was not "eligible" for TERA unless approved by the·Navy. Mr. Clary, on the other hand, contends that the term "eligible" does not require Navy approval. In other words, the dispute between the parties centers on whether eligibility under TERA requires explicit approval by the Navy. The Navy's policy as expressed by NAVADMIN 111/93 established Mr. Clary's eligibility pursuant to TERA. That policy was the Navy's interpretation of TERA at that time and the interpretation was not erroneous. An agency's interpretation of a statute is entitled to substantial deference where Congress has emphatically declared its preference that the agency prescribe policies to administer a statute and the agency interpretation claiming deference was issued in the exercise of that authority. *See United States v. Mead Corp.*, 533 U.S. 218, 227–28, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001); *Christensen v. Harris County*, 529 U.S. 576, 587, 120 S.Ct. 1655, 146 L.Ed.2d 621

(2000). In light of the Navy's policies and interpretation of TERA, specifically NAVADMIN 111/93, we hold that Mr. Clary was "eligible" to retire under TERA and that Navy approval was not required.

TERA includes an explicit congressional grant of authority to the Secretary of the Navy "to prescribe regulations and policies regarding the criteria for eligibility for early retirement by reason of eligibility pursuant to this section, and for approval of applications for such retirement." TERA, § 4403(d).

The first such policy implemented by the Navy was NAVADMIN 111/93. NAVADMIN 111/93 outlined, *inter alia,* the Navy's policies concerning the eligibility of officers. While NAVADMIN 111/93 specifically states that TERA was not an entitlement, it included a separate section entitled "Officer *Eligibility* Requirements" stating:

> Any officer, regular or reserve on the active duty list (ADL), with between 15 and 20 years of active duty, who is required to be separated for failure of selection (FOS) for promotion to the next higher grade may apply for TERA. These officers must have over 15 [years of service] before the date on which they would be required by law to be involuntarily separated from active duty. In addition to this broad category, only the following specific categories are *eligible:*
>
> \* \* \*
>
> C. Lieutenant Commanders in the following categories only:
>
> [Lieutenant Commanders] who have two or more FOS to 0–5, who will have between 15 and 20 [years of ser-

vice] as of 30 Sep 94, will be required to apply for the early retirement program (to retire no later than 1 Sep 94).

Mr. Clary met each of these requirements when he was discharged on May 31, 1994. Mr. Clary had fifteen years of service as of June 2, 1993 and was passed over for promotion a second time in 1993, which would have required him to be involuntarily separated from active duty.

While NAVADMIN 111/93 specifically stated TERA was not an entitlement, it specifically identified those officers that were *eligible* for TERA. The requirements for officers in Mr. Clary's position were simply that the officer must have: (1) between fifteen and twenty years of service; and (2) been passed over twice for promotion. NAVADMIN 111/93 did not require Naval approval for eligibility under TERA, as that term is used in NAVADMIN 111/93. Thus, under the Navy's policies, implemented pursuant to Congress's grant of authority, Mr. Clary was "eligible" for retirement under TERA.

Importantly, NAVADMIN 111/93 mentioned nothing of whether eligibility was dependent on whether the officer was being separated under adverse disciplinary or administrative action. Moreover, after Mr. Clary was discharged, the Navy implemented a second policy, NAVADMIN 133/94 that explicitly excluded officers in Mr. Clary's position from eligibility under the provisions of TERA. NAVADMIN 133/94 specifically stated that "an officer who is under adverse disciplinary or administrative action ... may not apply for early retirement until the action is resolved in favor of the member."[3]

---

**3.** Our colleague in dissent takes the position that the Navy adopted a policy similar to NAVADMIN 133/94 *before* Mr. Clary was discharged. In support of this position, he cites an unpublished, internal memorandum outlining potential options which the Navy was considering to address situations similar to Mr. Clary's. In response to this memoran-

The only question that remains is whether the Navy intended the administrative message to be binding. *See Farrell*, 314 F.3d at 590 (stating that an agency statement, not issued as a formal regulation, binds the agency only if the agency intended the statement to be binding). The primary consideration in determining the agency's intent is whether the text of the agency statement indicates it was designed to be binding on the agency. *Id.* at 591. Additionally, intent should be ascertained by an examination of the provision's language, its context, and any available extrinsic evidence. *Hamlet v. United States*, 63 F.3d 1097, 1104 (Fed. Cir.1995).

As described above, NAVADMIN 111/93 "implement[ed] the Navy FY–94 15 year early retirement reserve program for eligible officers and enlisted members. It [was] not an entitlement but a temporary early retirement authority (TERA) authorized until 30 Sep 95 to help facilitate personnel drawdown." This language indicates that the Navy intended NAVADMIN 111/93 to be a binding implementation of TERA. Accordingly, we hold that Mr. Clary "shall ... be retired in the grade and with the retired pay for which he would be eligible if retired under [TERA]...." 10 U.S.C. § 1186(b).

The government argues that this holding effectively grants officers who are subject to separation, by reason of misconduct or substandard performance, greater rights than those who otherwise voluntarily leave the service. It is to be noted, however, that any potential incongruity stems from the Navy's own implementation of TERA,

through NAVADMIN 111/93. Moreover, the Navy's amendment of its policy through NAVADMIN 133/94 recognized the objective eligibility of certain individuals who qualified under the terms of the policy implemented by NAVADMIN 111/93 and rectified this issue. Thus, the Navy's policy as of 1994, limits this result to Mr. Clary and others similarly eligible for TERA and discharged within that short period of time prior to the Navy's promulgation of NAVADMIN 133/94.

## III.

Lastly, the government appeals the Court of Federal Claims's grant of interest for the period between Mr. Clary's separation and the time he is placed on retirement.

■ As a general matter, absent a waiver of sovereign immunity, no interest may be paid. *Library of Cong. v. Shaw*, 478 U.S. 310, 314, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986); *United States Shoe Corp. v. United States*, 296 F.3d 1378, 1381 (Fed. Cir.2002) ("Interest may only be recovered in a suit against the government if there has been a clear and express waiver of sovereign immunity by contract or statute, or if interest is part of compensation required by the Constitution."); *Int'l Bus. Machs. Corp. v. United States*, 201 F.3d 1367, 1369 (Fed.Cir.2000) (holding that the United States is liable for interest only in the event of a clear statutory waiver of sovereign immunity). Indeed,

> it is axiomatic that "the sovereign's consent to be sued cannot be implied but must be equivocally expressed." There-

---

dum, various officers in the Navy voted to adopt an option that would make any officer that had pending or potential adverse disciplinary and/or administrative actions ineligible for retirement under TERA. This policy was implemented in July 1994 through NAVADMIN 133/94, not as of the date the offi-

cers voted, well after Mr. Clary's discharge. This unpublished memorandum does not negate the published, stated policy of the Navy in NAVADMIN 111/93—a policy this court now holds was intended to be binding. *See Farrell v. Dep't of the Interior*, 314 F.3d 584, 590 (Fed.Cir.2002).

fore, "an allowance of interest on a claim against the United States, absent constitutional requirements, requires an *explicit* waiver of sovereign immunity by Congress. Such express consent to the payment of interest must be found in either a special statute or an express contractual provision. The intent by Congress to permit the recovery of interest cannot be implied," and must be strictly construed.

*Zumerling v. Marsh,* 783 F.2d 1032, 1034 (Fed.Cir.1986) (citations omitted).

On appeal, Mr. Clary points to no explicit waiver of sovereign immunity allowing for recovery of back pay interest. In fact, Mr. Clary failed to address this argument by the government in his brief. Accordingly, absent an explicit waiver of sovereign immunity, the Court of Federal Claims's grant of interest is reversed.

## IV.

For the foregoing reasons, we affirm the Court of Federal Claims's grant of summary judgment holding Mr. Clary was entitled to retire under 10 U.S.C. § 1186(b)(1) and granting Mr. Clary back pay for the period between his separation and the time he is placed on retirement, and reverse the Court of Federal Claims's grant of interest.

*AFFIRMED–IN–PART, REVERSED IN PART.*

## COSTS

Each party to bear its own costs.

BRYSON, Circuit Judge, concurring in part and dissenting in part.

I respectfully dissent from the portion of the court's judgment holding that Mr. Clary is entitled to military retirement benefits. In order to be entitled to those benefits, Mr. Clary had to be "eligible for voluntary retirement" on the date of his removal from active duty. 10 U.S.C. § 1186(b)(1). In my view, Mr. Clary was not "eligible for retirement" at the time he was removed, and he therefore was not entitled to the retirement benefits awarded him by the Court of Federal Claims.

The purpose underlying section 1186 is to ensure that once a service member has qualified for retirement, an administrative discharge will not deprive the service member of his or her retirement benefits. A service member typically qualifies for retirement after 20 years of active duty. In 1992, however, Congress granted the service secretaries temporary authority to offer early retirement to selected service members with at least 15 years of active duty service. *See* National Defense Authorization Act for Fiscal Year 1993, Pub.L. No. 102–484, § 4403, 106 Stat. 2315, 2702–04 (1992). The 1992 statute was designed "to provide the Secretary of Defense a temporary additional force management tool with which to effect the drawdown of military forces through 1995." *Id.* § 4403(a). Section 4403(b)(2)(A) authorized the Secretary of the Navy to apply the provisions of the pertinent retirement authorization statute, 10 U.S.C. § 6323, to naval officers who had accumulated 15 years of active duty service, rather than the 20 years of active duty service that would otherwise be required. Section 4403(d) provided that each service secretary "may prescribe regulations and policies regarding the criteria for eligibility for early retirement by reason of eligibility pursuant to this section

and for approval of applications for such retirement. Such criteria may include factors such as grade, years of service, and skill."

The court today holds that because the Secretary of the Navy had the authority to grant early retirement to an officer in Mr. Clary's position, Mr. Clary must be considered to have been "eligible" for retirement within the meaning of section 1186(b)(1). I disagree. On November 6, 1993, some six months before Mr. Clary's administrative discharge, the Chief of Naval Personnel ("CNP") adopted a policy for the Navy that "if a member requests 15 year retirement and, while eligible in all other respects, has potential or pending adverse disciplinary and/or administrative action," the member's request would be denied. That policy was not formally promulgated and published as a regulation prior to Mr. Clary's discharge, but section 4403(d) does not require such formalities: It applies to both "regulations and policies regarding the criteria for eligibility for early retirement." Moreover, section 4403(d) provided that the "criteria for eligibility" could include factors "such as" grade, years of service, and skill, and the legislative history of that provision makes clear that the criteria for eligibility were "not limited to such factors." *See* H. Rep. No. 102–966, 102d Cong., 2d Sess. 886 (1992), *reprinted in* 1992 U.S.C.C.A.N. 1769, 1928. Because one of the "criteria for eligibility" adopted by the Secretary of the Navy excluded persons who were subject to administrative discharge, Mr. Clary was not "eligible for voluntary retirement" within the meaning of section 1186(b)(1) at the time of his discharge.

The court characterizes the CNP's November 6, 1993, action making persons who receive administrative discharges ineligible for retirement under TERA as merely a proposal for a policy change, which was not formally adopted until July 1994, several months after Mr. Clary's discharge. In fact, however, the evidence of record makes clear that the Navy regarded the November 6, 1993, action as adopting the policy that the Navy applied in denying Mr. Clary's request for retirement under TERA. In an October 19, 1995, memorandum to the Board for Correction of Naval Records, the Bureau of Naval Personnel explained that Mr. Clary's case led to the Navy's consideration of whether "officers undergoing disciplinary processing should be permitted to retire under the discretionary TERA law" and resulted in the November 6, 1993, "policy decision," which was approved by the CNP with the concurrence of the Assistant Secretary of the Navy for Manpower and Reserve Affairs. The memorandum states that the November 6, 1993, policy decision "became part of the statutorily authorized TERA implementing regulations when it was made by CNP with the concurrence of [the Assistant Secretary] on 6 November 1993," and that the November 6 policy decision "was applied when [the Assistant Secretary] approved the recommendation that LCDR Clary be separated with a General discharge, thus disapproving his request for 15 year retirement, on 29 March 1994." Because the evidence shows that the Navy adopted that policy prior to Mr. Clary's discharge and applied it to him at that time, and because there was nothing in the July 1993 regulation referred to by the court that is contrary to the November 6, 1993, policy decision, that policy decision qualifies as a valid policy "regarding the criteria for eligibility for early retirement" within the meaning of Section 4403(d). I would therefore reverse the decision of the Court of Federal Claims granting Mr. Clary retirement benefits.