PAULINE NEWMAN, Circuit Judge.
 

 James and Susan Doty appeal the judgment of the United States Court of Federal Claims
 
 [1]
 
 affirming the decision of the Department of Agriculture that James Doty (herein “Doty”) had breached a contract relating to the Dairy Termination Program and forfeited the contract amount of $99,841.96. The United States cross-appeals for recovery of an additional civil penalty of $10,000. We affirm in part and reverse in part.
 

 BACKGROUND
 

 Doty was a dairy farmer who participated in the Dairy Termination Program of the United States Department of Agriculture, a milk price support program that functions by paying farmers to reduce or eliminate their milk-producing herds. It is administered by the Agricultural Stabilization and Conservation Service (“ASCS”) of the Department of Agriculture, through County and State Committees comprised of dairy producers and ASCS employees. Overall management is in Washington, through the Deputy Administrator for State and County Operations. 7 U.S.C. § 1446(d)(3); 15 U.S.C. § 714; 7 C.F.R. §§ 1430.450-.470.
 

 In April 1986 Doty and the ASCS entered into a contract whereby the United States agreed to pay Doty $99,841.96 for slaughtering or permanently exporting all of the dairy cattle at the Doty farm by August 31, 1987. The contract listed 52 cows, 46 heifers, and 21 calves. Most of the cattle that were grazed and milked at the Doty farm belonged to Doty, but approximately twenty cattle belonged to Lowell Siekmann, a herdsman who managed the day-to-day operations of Doty’s farm.
 

 
 *1246
 
 Pursuant to the Program, the cattle were branded with a brand marking their inclusion in the Program. A surprise inspection conducted on June 16, 1986 by the ASCS verified that all of the cattle on the Doty farm were branded. The inspector, Steven Gniffke, described them as “good” brands. Mr. Gniffke counted 50 cows, 44 heifers, and 22 calves. The difference from the count in the contract was deemed not significant, in view of births, deaths, and the difficulty of counting moving herds. In October 1987 Doty certified that all of the cattle had been disposed of.
 

 In August 1988 the ASCS was informed that six cattle that had been scheduled for disposal were at the farm of Lawrence St. Aubin. The ASCS County Committee questioned Lowell Siekmann, who said that these were his cattle and that he had removed them from the Doty farm before Doty entered into the Program contract. Doty was also questioned. Doty confirmed that the entire herd had been slaughtered, and that he was doing no dairy farming and producing no milk.
 

 Siekmann again met with the County Committee in January 1989. He stated that his previous story was “a lie,” and that he had helped Doty to conspire to hold back some of the cattle. An inspection of the cattle on Lawrence St. Aubin’s farm showed that two of the six cattle bore the brand that had been placed on the Doty herd in the summer of 1986.
 

 The ASCS wrote to Doty on March 9, 1989, informing Doty that it appeared that he had violated the contract. On March 14, 1989 Doty wrote the ASCS asking for information about the violation with which he was charged. Doty wrote again on March 20, 1989, stating that the information - he had been sent in response to his previous letter said nothing about the violation. He then attempted to gain information through the Freedom of Information Act; this too was unsuccessful. The record does not show when Doty learned of Siekmann’s accusation.
 

 The County Committee met with Doty in April of 1989. Doty denied Siekmann’s accusation, and stated that the two branded animals in Siekmann’s possession were taken from his farm without his knowledge. Doty gave the County Committee the written statement of Lawrence St. Aubin, who stated that Siekmann had told St. Aubin that he, Siekmann, had taken the branded animals and that Doty knew nothing about it.
 

 Siekmann had also told the County Committee that the branding of Doty’s cattle was done by John Christianson, and that at Doty’s request Christianson had refrained from branding all of the cattle. When Doty later learned of this charge, as discussed
 
 infra,
 
 Christianson averred that he did not do the branding of Doty’s herd; and James St. Aubin, who did the branding, averred that none of the cattle on the Doty farm was omitted.
 

 The County Committee referred the matter to the Minnesota State Committee, accompanied by the County Committee’s finding that Doty had acted in good faith. The State Committee, after consultation with ASCS headquarters in Washington, recommended that the entire contract payment of $99,841.96 be forfeited and that Doty be assessed a penalty of $5000 for each of the six cattle. The State Committee recommended that Siekmann also be fined $30,000. These penalties were said to be required by the Program provision that “if there is a failure to comply with any term, requirement, or condition for payment arising under the contract,” the entire contract price will be forfeited. 7 U.S.C. § 1446(d)(3) (A) (iv); 7 C.F.R. § 1430.459(a); 7 C.F.R. § 1430.462(a). The Committee did not apply the Program provision for equitable payment when there is good faith compliance and substantial performance:
 

 In any case in which the failure of a producer to comply fully with the terms and conditions of any program to which this part is applicable precludes the making of loans, purchases, or payments, the Deputy Administrator, State and County Operations (DASCO), Deputy Administrator, Commodity Operations (DACO), and National Appeals Division (NAD), may, nevertheless, authorize the making of such loans, purchases, or payments in such amounts as determined to be equitable in relation to the seriousness of the failure.
 

 
 *1247
 
 The provisions of this part shall be applicable only to producers who are determined to have made a good faith effort to comply fully with the terms and conditions of the program and rendered substantial performance.
 

 7 C.F.R. § 791.2.
 

 The County Committee met again with Siekmann and his attorney on August 16, 1989, but not with Doty. There is no record of the events at this meeting, but in a written decision dated August 21, 1989 the County Committee held that Doty had switched cattle and deliberately reported an incorrect size of his herd. The County Committee required that Doty forfeit the entire'contract payment, and pay a penalty of $10,000 for the two branded cattle. Siekmann was relieved of all liability.
 

 Doty requested information about the charges against him on August 23, 1989 and was told to contact the State Committee. He asked again on August 28,1989, and again on September 8, 1989. Doty was not told what had happened to change the finding of good faith, or that there had been another meeting with Siekmann; he was told only that “additional information” had been “made available.” He was given no opportunity to respond to the additional information, or told what it was.
 

 Doty appealed to the State Committee, as provided by the Regulations then in effect, and requested a hearing. The agency again refused to provide Doty with information, and refused him access to the administrative file concerning his case, instead referring Doty to the Freedom of Information Act. Doty then sought his file through the FOIA. He was given one document, a file copy of a letter that had been sent him by the agency; the agency withheld the rest of the file from FOIA access.
 

 Nine days before the scheduled hearing Doty was provided with 61 pages of documents, including a copy of a written statement of Siekmann that he and Doty had conspired to withhold cattle and that he had lied to Lawrence St. Aubin when he told St. Aubin that the six cattle were his. Siekmann also stated that John Christianson had done the branding of the Doty herd and had left several cattle unbranded at Doty’s request, and that Christianson was given a heifer. Siekmann’s statement was unsigned and undated.
 

 Doty obtained, and provided at the State Committee hearing, Christianson’s sworn statement that he had not done the branding of Doty’s herd, had done no branding for ten years, was not present during the branding, and was not given a heifer. Doty also provided the sworn statement of Lawrence St. Aubin that Siekmann had said that the cattle were his, and the sworn statement of James St. Aubin that he had done all of the branding and that every animal was branded. He also provided the sworn statement of Steven Gniffke, the ASCS employee who conducted the surprise inspection, who averred that he had verified that all of the cattle were branded. Doty asked that Siekmann appear at the hearing, as well as Steven Gniffke. The State Committee denied Doty’s request that Siekmann appear, and refused to authorize Gniffke’s appearance.
 

 The agency made no findings of fact, and there was no statement by the agency of the grounds of its decision, although 7 C.F.R. § 780.8(d) requires that there be made at the hearing “a written record containing a clear, concise statement of the facts as asserted by the participant and material facts found by the reviewing authority.” No written record was made, despite Doty’s express request and the regulatory requirement, and no statement of facts was presented. The State Committee held, on the recommendation of the ASCS in Washington, that Doty must forfeit the full contract price, pay a $10,000 fine, and be prohibited from participation in all future farm programs.
 

 Doty appealed to the Deputy Administrator of the ASCS in Washington (the “DAS-CO”), as the Regulations authorized. Doty again stated that he had withheld no cattle from slaughter, and he pointed out that the only evidence to the contrary was Siekmann’s unsworn, unsigned, and inconsistent statement, which was contradicted by the sworn statements of four witnesses, three of them established members of the community and the fourth an employee of the ASCS. Doty
 
 *1248
 
 asked to depose certain other ASCS employees who were involved in his contract, and was refused. A hearing was held on December 5, 1989. No transcript was made, although Doty had requested a transcript and agreed to pay for the transcript, and apparently a reporter was present.
 
 [2]
 

 The DASCO decided against Doty, holding that Doty had made erroneous representations that his entire herd had been destroyed, and thus forfeited the entire payment under the contract; and that he had falsely stated the number of cattle slaughtered, thus warranting the civil penalty. Doty appealed to the Court of Federal Claims.
 

 The First Appeal to the Court of Federal Claims
 

 The government did not respond to Doty’s request for admissions in the proceeding before the Court of Federal Claims.
 
 [3]
 
 Doty’s other attempts to adduce evidence were also resisted. For example, the administrative record contained an unsigned document stating that Dan Hoekert and Josh Dirckx had inspected Siekmann’s cattle, whereas the signed statements of these men in the record did not mention the cattle. Doty noticed the depositions of Hoekert and Dirckx for November 14 and 21, 1990. The government moved the Court of Federal Claims (as it is now named) for a protective order “denying plaintiff any discovery in this matter and, more specifically, protecting two members of the Agricultural Stabilization and Conservation Service (ASCS), from appearing for depositions in Minnesota on November 14 and 21, 1990, pursuant to subpoenas
 
 duces tecum.”
 
 The court granted the protective order on November 7, 1990.
 

 However, the Court of Federal Claims in its decision (a year later) expressed concern at the procedures that were followed by the agency, including the refusals of the County Committee to tell Doty of the allegations that Siekmann was making and changing, and the Committee’s denial to Doty of the opportunity to confront Siekmann at any hearing. The court also expressed concern at the refusal of the government to provide Doty with relevant documents, and the withholding of documents until a few days before the hearings.
 

 The court referred to Siekmann’s third story, in which he stated that he had lied in his second story to the County Committee. In his second story Siekmann had said that he had lied in his first story to the County Committee. Siekmann’s third story was the undated and unsigned statement that the government gave to Doty nine days before the hearing before the State Committee, and that was contradicted by Doty’s four witnesses. The Court of Federal Claims pointed out that all of Siekmann’s unsworn/unsigned statements were directly refuted or impeached, or were so inconsistent as not to be credible.
 

 The court stated that although “the court must presume that DASCO acted correctly and with regularity,” the agency violated its own regulations in the hearing process, and that this was an abuse of agency discretion. The court vacated the ASCS decision, and remanded with instructions that the ASCS grant Doty a hearing in accordance with 7 U.S.C. § 1446(d) and the applicable regulations, 7 C.F.R. §§ 1430.450-.470.
 

 The court also instructed that on remand Doty shall have the opportunity to cross-examine Siekmann and submit rebuttal evidence, and ordered that “new findings of fact and appropriate determination(s) based on such findings shall be made.” The court stated three specific areas in which findings
 
 *1249
 
 were required concerning Doty’s actual knowledge of various events:
 

 Specific findings of fact should be made concerning (1) the actual knowledge of plaintiff James Doty as of October 30,1987 [the date Doty certified that the cattle had been destroyed] pertaining to whether the two branded animals found on Lawrence St. Aubin’s property in March 1989 had not been slaughtered or exported as required by contract, (2) the actual size and composition of Doty’s herd that should have been set forth in his DTP bid, and (3) the actual knowledge of Doty (rather than implied knowledge based on actual knowledge of Siekmann) pertaining to any other animals which should have been slaughtered or exported but are found not to have been slaughtered or exported.
 

 Doty v. United States,
 
 24 Cl.Ct. 615, 634 (1991). In its decision, issued December 4, 1991, the court set a six-month time limit for the government to file a report of the ordered hearing. Quarterly status reports from government counsel were also ordered.
 

 The First Remand to the Agency
 

 On the evening of June 1,1992, three days short of the six months’ deadline of June 4, the ASCS notified Doty that it would hold a hearing on June 3. However, Doty’s lawyer was scheduled to be in trial. The hearing that was ordered by the Court of Federal Claims was not held.
 
 [4]
 

 The first quarterly status report that was ordered by the Court of Federal Claims was not filed. The second was filed on June 5, 1992, a day late. The June 5 Report, although issued without the ordered hearing, contained additional findings. These findings were based on the same Siekmann evidence that had been criticized by the Court of Federal Claims. Indeed, throughout these proceedings no other evidence, and no corroboration of Siekmann’s evidence, was offered by the agency.
 

 The ASCS conducted a telephone “hearing” on July 21, over Doty’s objection to (1) the lack of opportunity by telephone to examine Siekmann and assess his credibility, (2) the inadequate notice, and (3) that the period had expired. No record was provided of this hearing.
 
 [5]
 
 The agency affirmed its prior ruling. Doty returned to the Cotut of Federal Claims.
 

 The Second Proceeding Before the Court of Federal Claims
 

 The Court of Federal Claims vacated the June 5 Status Report, since the ordered hearing had not been held. The court held that the telephone proceeding of July 21 was a nullity because it did not comply with the court’s order.
 

 The Court of Federal Claims held that the ASCS action was not final because the court had vacated it, and remanded for a final determination. The court ordered that on remand all evidence from Siekmann shall be disregarded, and that further proceedings must comply with 7 U.S.C. § 1446(d), which requires,
 
 inter alia,
 
 notice and the opportunity to be heard. Since the only evidence in the record that could support the civil penalty of $10,000 (assessed for the two branded cattle) came from Siekmann, the Court reversed the award of the civil penalty.
 

 The court required that the agency make new findings based on the remaining evidence, and a new determination with respect to the destruction of the Doty herd. The court directed the ASCS’s attention to 7 C.F.R. § 791.2, which authorizes mitigation when there is substantial compliance with the Program. This decision is reported at
 
 Doty v. United States,
 
 27 Fed.Cl. 598 (1993).
 

 The Second Remand to the Agency
 

 The DASCO concluded, based on “the record,” that Doty had not complied with the Program. The DASCO held that all six of
 
 *1250
 
 the cattle in Siekmann’s possession should have been slaughtered by Doty, and found that Doty had acted in bad faith.
 

 The DASCO also held, for the first time, that Doty had kept “insufficient records.” The sufficiency of Doty’s records had not previously been challenged. Doty provided an answering affidavit, pointing out the many records he had already filed, and submitting more.
 

 The DASCO denied waiver or mitigation, and again ordered forfeiture by Doty of the full contract price plus the assessed penalty.
 

 The Third Proceeding Before the Court of Federal Claims
 

 The Court of Federal Claims held that it had no authority to review the agency’s findings of fact, and that the issue of waiver or mitigation was discretionary with the agency and not reviewable. The court held that since it could not review the agency’s factual findings or its exercise of discretion, judicial review was limited to determining whether the agency’s ruling was within its authority. On this basis, the Court of Federal Claims upheld the agency’s ruling.
 

 Doty appeals to this court, seeking recovery of the contract price. The government cross-appeals the reversal of the $10,000 penalty.
 

 DISCUSSION
 

 A
 
 Procedure
 

 The government argued in the Court of Federal Claims that the agency determination is immune from judicial review. The agency’s administration of the various price support programs of the Department of Agriculture is subject to 7 U.S.C. § 1429:
 

 § 1429. Determinations by the Secretary [of Agriculture] under this Act shall be final and conclusive; Provided, That the scope and nature of such determinations shall not be inconsistent with the provisions of the Commodity Credit Corporation Charter Act.
 

 Section 1429 does not confer unreviewable finality on determinations of the Secretary. The United States Court of Appeals for the District of Columbia Circuit has discussed this statute in terms of due process considerations, as follows:
 

 Action challenged as a denial of due process — whether substantive in the sense of being arbitrary or by capricious classification, or procedural in the sense of denying minimum safeguards — could be immune from judicial review, if ever, only by the plainest manifestation of congressional intent to that effect. We find no such intent reflected in [7 U.S.C. § 1429]. To the contrary, Congress must have contemplated that a claim of “inconsistency” in the Secretary’s action was to be resolved by judicial review.
 

 Gonzalez v. Freeman,
 
 334 F.2d 570 (D.C.Cir.1964) (citations omitted). The court added that:
 

 In short, far from precluding judicial review this statute authorizes it, and “the responsibility of determining the limits of statutory grants of authority in such instances is a judicial function entrusted to the courts by Congress____”
 

 Id.
 
 (quoting
 
 Stark v. Wickard,
 
 321 U.S. 288, 310, 64 S.Ct. 559, 571, 88 L.Ed. 733 (1944)).
 
 See also Iowa ex rel. Miller v. Block,
 
 771 F.2d 347, 348 n. 1 (8th Cir.1985) (rejecting the government’s argument that 7 U.S.C. § 1429 renders the discretionary actions of the Secretary judicially unreviewable),
 
 cert. denied,
 
 478 U.S. 1012, 106 S.Ct. 3312, 92 L.Ed.2d 725 (1986).
 

 Although we do not review the wisdom of the Secretary’s decisions,
 
 Frank’s Livestock & Poultry Farm, Inc. v. United States,
 
 905 F.2d 1515, 1517 (Fed.Cir.1990), commitment to agency discretion does not authorize the agency to exceed its authority.
 
 Harmon v. Brucker,
 
 355 U.S. 579, 582, 78 S.Ct. 433, 435, 2 L.Ed.2d 503 (1958).
 
 See MCI Telecommunications Corp. v. Federal Communications Comm’n,
 
 675 F.2d 408, 413 (D.C.Cir.1982) (“the critical concern of the reviewing court is that the agency provide a coherent and reasonable explanation of its exercise of discretion”). A discretionary ruling must implement the statutory purpose, and must have a rational-basis in the record.
 

 
 *1251
 
 When procedural violations committed by the agency are egregiously removed from fairness, this constitutes an abuse of the agency’s administrative discretion.
 
 Cf. Gonzalez,
 
 334 F.2d at 580 n. 21. Such procedural violations impact the several agency procedures before appeal was taken to the Court of Federal Claims, and were if anything exacerbated by the agency’s failure of response to the orders and instructions of that court. When Siekmann’s unsigned/undated accusation is removed from consideration, as was ordered and as it must be, there remained no evidence or suggestion of bad faith or complicity on the part of Doty.
 
 See Greene v. McElroy,
 
 360 U.S. 474, 497, 79 S.Ct. 1400, 1414, 3 L.Ed.2d 1377 (1959) (“ ‘For two centuries past, the policy of the Anglo-American system of Evidence has been to regard the necessity of testing by cross-examination as a vital feature of the law.’”) (quoting 5
 
 Wigmore on Evidence
 
 § 1367 (3d ed. 1940)).
 

 The government in this appeal, justifying the agency’s persistent procedural violations, see nn. 2, 4, and 5, adds that the agency does not have subpoena power and therefore could not have granted Doty’s request that Siekmann and the ASCS employee Gniffke appear before the State Committee. However, the government did not need a subpoena to obtain the participation of its employee Gniffke, and 7 U.S.C. § 1446(d)(4) provides:
 

 The Secretary may make such investigations as the Secretary deems necessary for the effective administration of this subsection or to determine whether any person subject to the provisions of this subsection has engaged or is engaged or is about- to engage in any act or practice that constitutes or will constitute a violation of any provision of this subsection or regulation issued under this subsection. For the purpose of such investigation, the Secretary may administer oaths and affirmations,
 
 subpena witnesses, compel their attendance,
 
 take evidence, and require the production of any records that are relevant to the inquiry. Such
 
 attendance of witnesses
 
 and the production of any such records may be required from any place in the United States.
 

 (Emphases added.) The government, now argues that this subpoena provision applies only to investigations, not hearings, and does not mention the reference to “attendance of witnesses.” Indeed, this continuing justification of the unjustifiable is unseemly. “[C]ourts may not accept appellate counsel’s
 
 post hoc
 
 rationalizations for agency action. It is well established that an agency’s action must be upheld, if at all, on the basis articulated by the agency itself.”
 
 Motor Vehicle Mfrs. Ass’n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.,
 
 463 U.S. 29, 50, 103 S.Ct. 2856, 2870, 77 L.Ed.2d 443 (1983) (citations omitted).
 

 The agency’s refusal to permit and assist in Doty’s attempts to confront his accuser, the withholding of the evidence on which the agency purported to rely, and the continuing violations of the orders of the Court of Federal Claims, were not only egregiously removed from the fairness required of an agency in its administrative responsibilities, but also contrary to the purpose and spirit of the agency’s regulations that provided for administrative review. Deviation from a court’s remand order by an agency is legal error, and is subject to judicial review.
 
 Sullivan v. Hudson,
 
 490 U.S. 877, 885-86, 109 S.Ct. 2248, 2254-55, 104 L.Ed.2d 941 (1989). The totality of the agency’s actions leave us with the unavoidable conclusion that there has been a violation of the fundamental principles of fairness, as described in
 
 Greene v. McElroy,
 
 360 U.S. 474, 496, 79 S.Ct. 1400, 1413, 3 L.Ed.2d 1377 (1959):
 

 Certain principles have remained relatively immutable in our jurisprudence. One of these is that where governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government’s case must be disclosed to the individual so that he has an opportunity to show that it is untrue. While this is important in the ease of documentary evidence, it is even more important where the evidence consists of the testimony of individuals whose memory might be faulty or who, in fact, might be perjurers or persons motivated by malice, vindictiveness, intolerance, prejudice, or jealousy. We have formalized these protections in the re
 
 *1252
 
 quirements of confrontation and cross-examination.
 

 The government argues that we should not decide in favor of Mr. Doty in order to “punish” the agency for its procedural violations. We agree that this is a separate consideration, and we review the merits to determine whether, on the grounds on which the agency relied for the action that it took, the agency action constituted arbitrary or capricious conduct, or was an abuse of the agency’s discretionary authority, or violated an applicable statute or regulation.
 

 B. Substance
 

 On the merits of Doty’s claim, it remains undisputed that the only evidence against Doty was the unsworn, unsigned, and uncorroborated statement of Siekmann. In this appeal the government continues to refer to the statement of Siekmann as the factual basis for its position. That statement was correctly excluded by the Court of Federal Claims, for every aspect thereof was contradicted by the consistent testimony of witnesses, of quality and weight as to thoroughly impeach the unsworn statement of Siekmann. Siekmann himself admitted that he lied in two successive statements, and he did not sign his third statement. There was no other evidence against Doty, and a good deal of evidence supporting Doty. The Court of Federal Claims found that there were “four disinterested sources of evidence (James St. Aubin, Lawrence St. Aubin, Christianson, and Gniffke) before the State Committee, which refuted the accuracy of Siekmann’s written statement and which supported Doty’s position and Siekmann’s first (oral) statement.”
 
 Doty v. United States,
 
 24 Cl.Ct. 615, 621-22 (1991).
 

 No discrepancies were found during the ASCS inspection by Gniffke, and it is not disputed that Doty’s herd was destroyed, in accordance with the verified count. We do not know whether the two branded cattle were switched by Siekmann, as Doty speculates. The government argues that all factual inferences must be drawn against Doty. However, inferences must have an evidentiary basis. On the record as a whole, the agency’s conclusion that Doty acted in bad faith and violated his contract was arbitrary and capricious, in that the only evidence on which the agency relied was not properly before it.
 
 See National R.R. Passenger Corp. v. Boston & Me. Corp.,
 
 503 U.S. 407, 419-21, 112 S.Ct. 1394, 1403, 118 L.Ed.2d 52 (1992) (“an agency’s action may not be upheld on grounds other than those relied on by the agency”);
 
 SEC v. Chenery Corp.,
 
 332 U.S. 194, 196, 67 S.Ct. 1575, 1577, 91 L.Ed. 1995 (1947) (same). Thus the Court of Federal Claims erred in sustaining the agency’s action. The court’s decision is reversed. It is ordered that the contract price of $99,-841.96 shall be paid to Doty, with interest in accordance with law.
 

 C. The Civil Penalty
 

 The Court of Federal Claims vacated the additional $10,000 penalty against Doty. For the reasons discussed in Parts A and B, this decision is affirmed.
 

 Costs
 

 Taxable costs to Doty.
 

 AFFIRMED IN PART AND REVERSED IN PART.
 

 COWEN, Senior Circuit Judge, concurs in the result.
 

 [1]
 

 .
 
 Doty v. United States,
 
 No. 90-491 C (Fed.Cl. Aug. 5, 1993).
 

 [2]
 

 . The government states on this appeal that “Doty never submitted a transcript of the December 5, 1989 hearing to the Court [of Federal Claims].” Appellee’s Brief at 9 n. 9. Doty points out that he requested a transcript and agreed to pay for it, and that the government’s counsel told the Court of Federal Claims that none was made. The government does not state otherwise. The government’s criticism of Doty on this ground is curious.
 

 [3]
 

 . In accordance with the Rules of the Court of Federal Claims, a request for admissions that is not denied is deemed admitted. We note that one of the admissions recites a request by Siekmann for money from Doty during this period, refused by Doty.
 

 [4]
 

 . The government in its brief to this court states that its failure to meet the Court of Federal Claims’s deadline was “due to Mr. Doty’s counsel's schedule.” As in n. 2
 
 supra,
 
 this placement of fault is curious.
 

 [5]
 

 . The government’s brief states: "On July 21, 1992 ... the DASCO held a hearing at which Mr. Siekmann was present and subject to cross examination by Mr. Doty’s attorney." The government does not mention that this “hearing” and Siekmann’s “presence” were by telephone.