# United States Court of Appeals for the Federal Circuit

---

**JESSIE CONTRERAS,**
*Petitioner-Appellant*

**v.**

**SECRETARY OF HEALTH AND HUMAN SERVICES,**
*Respondent-Appellee*

---

2015-5097

---

Appeal from the United States Court of Federal Claims in No. 1:05-vv-00626-LJB, Senior Judge Lynn J. Bush.

---

Decided: January 3, 2017

---

JEFFREY S. POP, Jeffrey S. Pop & Associates, Beverly Hills, CA, argued for petitioner-appellant.

VORIS EDWARD JOHNSON, JR., Vaccine/Torts Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee. Also represented by BENJAMIN C. MIZER, VINCENT J. MATANOSKI, RUPA BHATTACHARYA, LINDA SARA RENZI.

---

Before DYK, MAYER, and HUGHES, *Circuit Judges.*

HUGHES, *Circuit Judge.*

Jessie Contreras appeals from a U.S. Court of Federal Claims judgment upholding a Special Master's denial of compensation for his Guillain-Barre Syndrome and Transverse Myelitis allegedly caused by vaccinations. Because the Special Master improperly diagnosed Mr. Contreras and failed to consider relevant evidence related to his Guillain-Barre Syndrome, we vacate and remand for further proceedings consistent with this opinion.

I

On June 16, 2003, Jessie Contreras (Mr. Contreras), then thirteen years old, received the Tetanus-Diphtheria vaccine and his third inoculation of the Hepatitis B vaccine. Before he received these vaccinations, Dr. Fred Kyazze conducted a complete physical examination and determined that Mr. Contreras was healthy.

Approximately twenty-four hours later, Mr. Contreras complained to his mother that he was experiencing back pain and numbness in his hands. She immediately took Mr. Contreras to the emergency room, where Dr. Mark Wagner, a board-certified emergency room physician, diagnosed him with atypical Guillain-Barre Syndrome (GBS), a peripheral nervous system disease that causes descending paralysis from the upper to lower extremities. J.A. 281; 586. Mr. Contreras's symptoms rapidly escalated—within hours he had difficulty standing or walking, weakness in his arms, and required catheterization. Mr. Contreras was ultimately transferred to the pediatric intensive care unit at Miller Children's Hospital.

Upon admittance at Miller Children's, Mr. Contreras was described as presenting "progressive neuromuscular deterioration and life-threatening respiratory failure." J.A. 288. Over the next three months, Mr. Contreras suffered from a variety of symptoms caused by his illness,

including quadriplegia and acute respiratory failure. J.A. 289. Mr. Contreras was discharged from Miller Children's on September 11, 2003, with a discharge diagnosis of Transverse Myelitis (TM), an inflammatory disease of the spinal cord.[1] J.A 289; J.A. 608.

On June 15, 2005, Mr. Contreras's father filed a petition for vaccine compensation under the Vaccine Act, alleging that Mr. Contreras suffered TM and GBS as the result of the vaccinations administered on June 16, 2003. Mr. Contreras's petition included affidavits from: (1) Dr. Kyazze; (2) Dr. Wagner; and (3) Dr. Jeremy S. Garrett, a general pediatrician and critical care physician, who treated Mr. Contreras during his admission to Miller Children's and ultimately diagnosed him with TM. Mr. Contreras also filed the expert report of pediatric neurologist Dr. Charles M. Poser, M.D., who concluded that he developed GBS and TM as a direct result of the administration of the vaccines.

On October 7, 2005, the Secretary of Health and Human Services filed her Vaccine Rule 4 Report indicating that Mr. Contreras was not entitled to compensation because he had failed to establish, by a preponderance of the evidence, that either vaccine caused his condition. The Secretary also filed the expert report of pediatric neurologist John T. Sladky, M.D., who opined that Mr. Contreras only suffered from TM, not both TM and GBS, and that the time interval—less than twenty-four hours between the administration of Mr. Contreras's

---

[1] Although TM and GBS are both "diseases in which portions of the nervous system are demyelinated," J.A. 41, TM affects the central nervous system, which is protected by the blood-brain barrier, *see* J.A. 459, and GBS affects the peripheral nervous system, which is not protected by the blood-brain barrier, *see id.*

vaccines and the onset of his TM—was too soon for one or both of the vaccinations to have caused his condition.

To address whether Mr. Contreras's illness had occurred within a medically-appropriate time-frame, Mr. Contreras submitted the medical expert report of pediatric neurologist Lawrence Steinman, M.D., who concluded that Mr. Contreras developed both GBS and TM caused by a rapid adverse immunological response to both vaccinations. In response to Dr. Steinman's report, the Secretary filed an expert report from immunologist J. Lindsay Whitton, M.D., Ph.D., who agreed that Mr. Contreras suffered from both GBS and TM, but disputed Dr. Steinman's theory of causation and the timing of Mr. Contreras's condition in relation to his vaccinations, reiterating that twenty-four hours was not enough time for either TM or GBS to develop after vaccination.

On April 5, 2012, the Special Master issued his first decision (*Contreras I*) denying Mr. Contreras compensation under the Vaccine Act. *See* J.A. 30–64. The Special Master determined that Mr. Contreras only suffered from TM, not both TM and GBS. The Special Master then concluded that Mr. Contreras failed to establish that the TM arose within a "medically appropriate" timeframe following his vaccinations under the third prong of *Althen v. Secretary of Health & Human Services*, 418 F.3d 1274 (Fed. Cir. 2005). J.A. 62–63.

Mr. Contreras sought review and on September 28, 2012, the Court of Federal Claims vacated and remanded *Contreras I* after concluding that the Special Master's finding of a specific diagnosis was not in accordance with law (*Contreras II*). The Special Master was instructed, on remand, to refrain from making a determination regarding Mr. Contreras's specific diagnosis. The Special Master was also instructed to analyze the evidence under all three prongs of *Althen*, address the weight afforded to

Mr. Contreras's treating physicians, address whether Mr. Contreras had ruled out all alternative causes for his condition, consider case reports, and more thoroughly discuss the evidence proffered in Dr. Poser's report. J.A. 110–13.

During the pendency of the decision on remand, the Secretary filed a status report disclosing that Dr. Sladky's medical license was suspended during the time that he had provided the Government with expert witness services in this case. J.A. 118. Moreover, Dr. Sladky's CV indicated that he was licensed to practice medicine in Pennsylvania, but that license expired in 1996, nine years before his initial report was filed in this case. *Id.* The Secretary maintained that these "undisclosed licensure issues should not affect the evidentiary weight of his opinions." J.A. 119. Mr. Contreras disagreed and argued that Dr. Sladky's testimony should "carry little, if any weight," J.A. 118, because his "lack of transparency and untruthfulness . . . bear on his bias and character critically undermining his credibility as an expert," J.A. 119 (omission in original).

On November 19, 2013, the Special Master again denied Mr. Contreras compensation (*Contreras III*). J.A. 114–90. First, the decision found that Dr. Sladky's opinion "retain[ed] some value" after determining that "the lack of disclosure and (implicit) misrepresentation about qualification do[] not entirely negate [his] opinion." J.A. 120. Next, the Special Master determined that Mr. Contreras did not suffer from GBS—a direct violation of the court's instruction to refrain from diagnosing Mr. Contreras—and therefore based his analysis solely on the TM diagnosis. J.A. 143–45. Finally, he determined that "the one-day interval is not a time-frame for which it is medically acceptable" to conclude that the vaccine caused the injury. J.A. 189.

Mr. Contreras again sought review and on May 19, 2014, the Court of Federal Claims vacated and remanded *Contreras III* (*Contreras IV*). J.A. 191–214. The Court of Federal Claims was highly critical of the Special Master's finding that Dr. Sladky's opinion retained "some value" in light of his failure to disclose his suspended medical license and his lack of candor during his testimony regarding his credentials and job description. J.A. 212. On remand, the Special Master was instructed to: (1) address Dr. Sladky's credibility and reliability in light of his misrepresentations; (2) compare Dr. Sladky's credibility to the credibility of the experts and witnesses testifying for Mr. Contreras; and (3) issue an alternative ruling that completely disregards all of Dr. Sladky's opinions and testimony. J.A. 212–13.

On October 24, 2014, the Special Master issued a second Decision on Remand denying Mr. Contreras compensation (*Contreras V*). J.A. 215–74. The Special Master again determined that although Dr. Sladky had misrepresented his credentials, J.A. 242, his opinions were based upon "reliable methodologies" and, therefore, retained some value, J.A. 244–45. The Special Master also issued an alternative opinion that disregarded the opinions and testimony of Dr. Sladky, and concluded that Mr. Contreras's expert, Dr. Steinman, had failed to establish by a preponderance of the evidence a proximate temporal relationship between the vaccination and the injury as required under prong three of *Althen*. J.A. 265–66; 273–74.

Mr. Contreras sought review for a third time, which the Court of Federal Claims denied on April 17, 2015 (*Contreras VI*). The court determined that the Special Master abused his discretion by crediting Dr. Sladky's opinion and therefore vacated the entitlement ruling in *Contreras III*, which was incorporated into *Contreras V*. J.A. 7–18. The court also found that the Special Master erred by conducting a "threshold inquiry into the specific

diagnosis of [Mr. Contreras's] alleged vaccine injury," and by imposing "a higher burden on petitioner [on *Althen* prong one] than is appropriate under Federal Circuit precedent," but that both errors were harmless. *See* J.A. 22–23; 26. Finally, the court determined that the Special Master's alternate ruling on *Althen* prong three—that twenty-four hours was too short of time to develop TM or GBS after a vaccine—contained no error of law or abuse of discretion. J.A. 27. Therefore, the court denied the petition for review.

Mr. Contreras appeals. We have jurisdiction under 42 U.S.C. § 300aa-12(f).

## II

The Federal Circuit reviews an appeal from the Court of Federal Claims in a Vaccine Act case de novo, "applying the same standard of review as the Court of Federal Claims applied to its review of the special master's decision." *Griglock v. Sec'y of Health & Human Servs.*, 687 F.3d 1371, 1374 (Fed. Cir. 2012) (citation omitted); *see also Paluck v. Sec'y of Health & Human Servs.*, 786 F.3d 1373, 1378 (Fed. Cir. 2015). "We give no deference to the Claims Court's or Special Master's determinations of law, but uphold the Special Master's findings of fact unless they are arbitrary or capricious." *Griglock*, 687 F.3d at 1374 (citation omitted). We review discretionary rulings—i.e., exclusion of evidence or limitation of the record upon which the special master relies—under the abuse of discretion standard. *Munn v. Sec'y of Health & Human Servs.*, 970 F.2d 863, 870 n.10 (Fed. Cir. 1992). Ultimately, "if the special master 'has considered the relevant evidence of record, drawn plausible inferences and articulated a rational basis for the decision, reversible error will be extremely difficult to demonstrate.'" *Hibbard v. Sec'y of Health & Human Servs.*, 698 F.3d 1355, 1363 (Fed. Cir. 2012) (quoting *Hines ex. rel. Sevier v. Sec'y of the Dep't of*

*Health & Human Servs.*, 940 F.2d 1518, 1528 (Fed. Cir. 1991)).

To establish that the vaccine caused the injury, a petitioner must prove, by a preponderance of the evidence: (1) a medical theory causally connecting the vaccination to the injury; (2) a logical sequence of cause and effect demonstrating that the vaccination caused the injury; and (3) a proximate temporal relationship between the vaccine and the injury. *Althen*, 418 F.3d at 1278.

Here, the Court of Federal Claims determined that the Special Master erred by conducting a "threshold inquiry into the specific diagnosis of Jessie's alleged vaccine injury," but that the error was harmless. We disagree.

In *Hibbard*, this court determined that if there is a dispute as to the nature of a petitioner's injury, the special master may opine on the nature of the petitioner's injury. 698 F.3d at 1365. Here, however, there was no dispute as to the nature of Mr. Contreras's injury—both parties' experts agreed that he suffered from TM and GBS. *See* J.A. 379; 426. Therefore, the Special Master erred by concluding that Mr. Contreras only suffered from TM and not both TM and GBS.

That error was harmful. Based on this improper diagnosis, the Special Master did not consider relevant evidence related to GBS in his *Althen* analysis. *See* J.A. 256 ("Mr. Contreras did not suffer from Guillain-Barre syndrome."); J.A. 145 ("[T]he following *Althen* analysis is limited to the issue of whether the hepatitis B vaccine can cause transverse myelitis."); J.A. 63 ("The testimony of . . . Dr. Whitton was consistent with medical literature that shows that, at a minimum, the blood brain barrier [which is only implicated in TM] would prevent an immune-mediated reaction in the spinal cord in one day."); *id.* ("[Dr. Whitton's] opinion is that 'there is no credible hypothesis that would explain a 24-hour

timeframe, which would tie a vaccine causally to the induction of such a profound central nervous system disease [TM].'" (citation omitted)). Although the Special Master noted that Dr. Whitton's conclusion "would not change depending upon the demyelinating disease," J.A. 257, this does not mean that the Special Master *considered* evidence related to demyelinating disease GBS. In fact, to the contrary, the record supports the conclusion that the Special Master failed to consider the medical theories advanced by Dr. Steinman and Dr. Whitton relating to Mr. Contreras's GBS diagnosis. *See id.*

Because TM and GBS are separate diagnoses that affect different parts of the nervous system, we find that the Special Master committed reversible error by failing to consider relevant evidence related to GBS. Therefore, this case must be remanded once again for a proper consideration of the evidence.

### III

Ordinarily, this case would be remanded to the originally assigned Special Master. *See Richardson ex. rel. Richardson v. Sec'y of Health & Human Servs.*, 89 Fed. Cl. 657, 660 (2009). In this instance, however, we believe that fundamental fairness is best served by assigning the case to a different special master on remand. *See id.*; Vaccine Rule 3(d).

This case has a lengthy history, including two separate remands before the present appeal. The Special Master has consistently maintained that Mr. Contreras only suffers from TM—despite specific instructions that he must consider both the TM and GBS diagnoses. *See* J.A. 111 ("The special master may not diagnose Jessie's illness, but shall examine whether petitioner has established a prima facie case that he suffered a vaccine-related combination of TM and GBS."). Given that the Special Master has maintained an erroneous viewpoint throughout this case, despite instructions to the contrary,

we advise that this case be assigned to a different special master on remand. *See United States v. Robin*, 553 F.2d 8, 10 (2d Cir. 1977) ("[Reassignment is advisable] [w]here a judge has made detailed findings based on evidence erroneously admitted or factors erroneously considered, [because] the circumstances sometimes are such that upon remand he or she . . . cannot reasonably be expected to erase the earlier impressions from his or her mind . . . ."); *id.* at 11 ("[W]here a judge has repeatedly adhered to an erroneous view after the error is called to his attention, reassignment to another judge may be advisable in order to avoid an exercise in futility (in which) the Court is merely marching up the hill only to march right down again." (internal quotation marks and citations omitted)).

IV

Because the Special Master committed reversible error by failing to consider relevant evidence related to Mr. Contreras's Guillain-Barre Syndrome, we vacate and remand for further proceedings consistent with this opinion. On remand, the newly assigned special master shall issue comprehensive findings and conclusions as to all issues. In light of our disposition, we need not address the appellant's other asserted errors, which may well be obviated by the findings and conclusions of the new special master on remand.

**VACATED AND REMANDED**

Costs to Contreras.